OPINION OF THE COURT
 

 Levine, J.
 

 Plaintiffs are three foreign banking institutions suing on unsecured debts totaling some $30 million of defendant Rossiyskiy Kredit Bank (Rossiyskiy), a Russian banking institution, guaranteed by defendant Rossiyskiy Kredit Securities PV. Plaintiffs were participants in a syndicate which purchased some $200 million of Rossiyskiy’s first series debentures in 1997. The debentures were due September 29, 2000, bearing a fixed interest rate of 10.25% per annum, payable semiannually. Under the terms of the debentures,
 
 *544
 
 defendants agreed to submit to the jurisdiction of the New York courts in the event of a default and to be governed by New York law in any such action.
 

 Apparently as a result of the worsening crisis in the Russian economy in 1998, Rossiyskiy became financially distressed. It defaulted on an interest payment on the debentures due March 29, 1999. Plaintiffs proceeded to exercise their right to accelerate the entire principal and interest on those debt securities. Defendants do not contest the fact of their complete default.
 

 Plaintiffs then brought this action to recover the full amount of principal and interest due under their debentures. Their complaint sets forth two causes of action on the debts. In a third cause of action they allege that defendants are presently insolvent and as such owe a fiduciary duty to preserve assets for the benefit of general creditors; that defendants had breached their fiduciary duty by transferring Rossiyskiy’s branch network and clientele (its principal assets) to Impexbank, another Russian banking institution, thus stripping defendants of the assets necessary to satisfy any judgment awarded plaintiffs; and that they are entitled to permanent injunctive relief to protect their expected money judgment.
 

 Simultaneously with the commencement of this action, plaintiffs moved for an order of attachment and a temporary injunction against defendants’ further transfer of assets. Supreme Court granted plaintiffs both of those provisional remedies. The preliminary injunction, among other things, prohibits defendants from “(1) dissipating, transferring, conveying or otherwise encumbering their assets and (2) taking steps in furtherance of [Rossiyskiy’s] alliance with Impexbank.” The Appellate Division affirmed in all respects, then granted leave to appeal to us on the certified question of the propriety of that affirmance. Defendants have limited their appeal to the portion of the Appellate Division order affirming the grant of a preliminary injunction. We now reverse.
 

 The provisional remedy of a preliminary injunction in New York civil actions is governed by CPLR 6301, which provides in pertinent part:
 

 “A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff’s rights respecting the
 
 subject of the action,
 
 and tending to render the judgment ineffectual, or
 
 *545
 
 in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff” (emphasis supplied).
 

 Plaintiffs are unsecured contract creditors, whose ultimate objective is attaining an enforceable money judgment. Their third cause of action for injunctive relief to prevent the threatened dissipation of Rossiyskiy’s assets, making it judgment proof, is incidental to and in aid of the monetary relief they seek. In applying provisional equitable remedies under civil procedure codes, from as early as 1892 in
 
 Campbell v Ernest
 
 (64 Hun 188), our courts have consistently refused to grant general creditors a preliminary injunction to restrain a debtor’s asset transfers that allegedly would defeat satisfaction of any anticipated judgment.
 

 In
 
 Campbell v Ernest,
 
 just as here, plaintiff averred that the “ ‘defendant herein will, during the pendency of this action,
 
 dispose of his property
 
 * * * with intent to defraud the plaintiff herein, and
 
 to render nugatory any proceeding or effort by this plaintiff to obtain payment of his claim in this
 
 action’ ”
 
 (id.,
 
 at 189 [emphasis supplied]). At the time, section 604 (2) of the Code of Civil Procedure authorized a preliminary injunction where the “defendant, during the pendency of the action, threatens or is about to remove or dispose of his property, with intent to defraud the plaintiff.” The
 
 Campbell
 
 court held that section 604 (2) did not apply “to an action of this character, where a moneyed judgment only is sought”
 
 (id.,
 
 at 192). Rather, provisional injunctive relief was limited to equitable actions where the defendant threatened to violate the rights of the plaintiff
 
 “respecting the subject of the action,
 
 which would tend to render the judgment ineffectual”
 
 (id.
 
 [emphasis supplied]).
 
 Campbell
 
 explained that, in a pure contract money action, there is no right of the plaintiff in some specific
 
 subject
 
 of the action; hence, no prejudgment right to interfere in the use of the defendant’s property; and no entitlement to injunctive relief pendente lite.
 

 “In no proper or legal sense can a defendant do or permit any act in violation of the plaintiffs rights respecting the subject of the action, in an action on contract for the recovery of money only. The plaintiff in such an action
 
 has no rights as against
 
 
 *546
 

 the property of the defendant
 
 until he obtains a judgment, and
 
 until then he has no' legal right to interfere with the defendant in the use and sale of the
 
 same”
 
 {id.
 
 [emphasis supplied]).
 

 More than 100 years after the
 
 Campbell v Ernest
 
 decision, the United States Supreme Court, in
 
 Grupo Mexicano de Desarrollo v Alliance Bond Fund
 
 (527 US 308), came to the very same conclusion — that an unsecured creditor suing to collect a debt was not entitled to preliminary injunctive relief to prevent the debtor’s dissipation of assets prior to judgment. The plaintiff in
 
 Grupo Mexicano
 
 brought a money damage action in the Federal courts on its unsecured debt; and to freeze assets, it sought a preliminary injunction under rule 65 of the Federal Rules of Civil Procedure, the Federal counterpart to CPLR 6301. The plaintiff’s allegations in support of its request for a preliminary injunction in
 
 Grupo Mexicano
 
 parallel the grounds the plaintiff averred in
 
 Campbell
 
 and those asserted by plaintiffs here. Plaintiff in
 
 Grupo Mexicano
 
 claimed that “ ‘[defendant] GMD is at risk of insolvency, if not insolvent already’; that GMD was dissipating its most significant asset * * * and was preferring its Mexican creditors * * * and that these actions would ‘frustrate any judgment’ respondents could obtain”
 
 (Grupo Mexicano de Desarrollo v Alliance Bond Fund,
 
 527 US, at 312).
 

 Both the majority and the dissent in
 
 Grupo Mexicano
 
 agreed that, under the Federal Judiciary Act of 1789, Federal Rules of Civil Procedure, rule 65 could not be extended to grant preliminary injunctive relief beyond that provided under “ ‘traditional principles of equity jurisdiction’” (527 US, at 319, quoting 11A Wright, Miller and Kane, Federal Practice and Procedure § 2941, at 31 [2d ed];
 
 see,
 
 527 US, at 335-336 [Ginsburg, J., concurring in part and dissenting in part]). They differed on whether, under those established equitable principles, a Federal court had the authority to interfere with a debtor’s use of unencumbered property during the pendency of a creditor’s money action on the debt. Precisely as the New York court reasoned in
 
 Campbell,
 
 the Supreme Court majority in
 
 Grupo Mexicano
 
 concluded that no provisional injunctive remedy was available because of “the substantive rule that a general creditor (one without a judgment) had no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor’s use of that property”
 
 (id.,
 
 at 319-320).
 

 It is well worth noting that, in support of that holding, Justice Scalia, writing for the majority, invoked a venerable
 
 *547
 
 New York authority on general principles of equity jurisdiction:
 

 “As stated by Chancellor Kent: ‘The reason of the rule seems to be, that until the creditor has established his title, he has no right to interfere, and it would lead to an unnecessary, and, perhaps, a fruitless and oppressive interruption of the exercise of the debtor’s rights’ ” (id., at 320, quoting
 
 Wiggins v Armstrong,
 
 2 Johns Ch 144, 145-146).
 

 Our courts have uniformly followed the precept of
 
 Campbell v Ernest (supra),
 
 both before and after enactment of the CPLR
 
 (see, Eastern Rock Prods. v Natanson,
 
 239 App Div 529;
 
 Babho Realty Co. v Feffer,
 
 230 App Div 866 [under former Civil Practice Act];
 
 First Natl. Bank v Highland Hardwoods,
 
 98 AD2d 924;
 
 Fair Sky v International Cable Ride Corp.,
 
 23 AD2d 633 [post-CPLR]).
 

 It cannot be argued that CPLR 6301 was intended to expand or liberalize the traditional equity principle against provisional injunctive relief in a general creditor’s action on a debt, to prevent the dissipation of assets necessary to satisfy the anticipated money judgment. To the contrary, the evidence is that section 6301 was intended to embody the very same traditional principles of equity jurisdiction
 
 Grupo Mexicano
 
 found reflected in Federal Rules of Civil Procedure, rule 65 in an action on a debt.
 
 *
 
 As one practice commentator has pointed out, article 63 of the CPLR does not represent “any radical departure from prior practice with regard to the availability of the provisional remedy of injunction * * *. Accordingly, New York’s provisional remedy of injunction under current law continues, as it did under prior law, to be substantially similar to the preliminary injunction * * * that is available under federal practice and embodied in rule 65 of the Federal Rules of Civil Procedure” (13 Weinstein-Korn-Miller, NY Civ Prac 116301.01).
 

 Each of the cases cited by the courts below or plaintiffs here in support of a contrary view (that a threatened denuding of
 
 *548
 
 defendant’s assets justifies a preliminary injunction in a suit for money damages) is inapposite, either because the equitable relief in the case was granted under procedures independent of CPLR 6301, or because the suit involved claims of the plaintiff to a specific fund, rightly regarded by the court as “the subject of the action” (CPLR 6301), making a preliminary injunction appropriate under the express wording of that provision.
 

 Plaintiffs attempt to avoid the thrust of
 
 Campbell v Ernest (supra)
 
 and its progeny by relying on their third cause of action alleging not just the claim to recover the debt due, but also the insolvent defendants’ breach of fiduciary duty and plaintiffs’ request for a permanent injunction as part of the judgment. Plaintiffs contend that this cause of action brings them within the clause of section 6301 authorizing a preliminary injunction “where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or continued during the pendency of the action, would produce injury to the plaintiff.” This argument fails for a number of reasons.
 

 First, undeniably, plaintiffs’ third cause of action is incidental to and purely for the purposes of enforcement of the primary relief sought here, a money judgment. Making an exception on the basis that permanent equitable relief is sought in support of a suit essentially for money only would be too facile a way to avoid and undermine the settled proscription against preliminary injunctions merely to preserve a fund for eventual execution of judgment in suits for money damages. As Professor Siegel has put it, the mere danger of asset-stripping is not a sufficient basis to make an exception to the general rule:
 

 “Although the inclusion of a money demand will not necessarily preclude an injunction if other relief, which would satisfy this provision of CPLR 6301, is also sought,
 
 the court will refuse the injunction if convinced that a money judgment is the true object of the action and that all else is incidental.
 
 (In a money action,
 
 P often fears that D will secrete property
 
 during the action’s pendency and thus
 
 make a money judgment uncollectable.
 
 P’s remedy there, if P can establish such conduct by D convincingly, is an order of attachment under CPLR 6201 [3], not an injunction under Article 63.)” (Siegel, NY Prac § 327, at 498 [3d ed] [emphasis supplied];
 
 *549
 

 see also,
 
 McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C6301:l, at 209.)
 

 Second, plaintiffs argument overlooks the substantive rule of equity which, as has been shown here, has prevailed for over two centuries, from Chancellor Kent through
 
 Campbell v Ernest
 
 to
 
 Grupo Mexicano,
 
 that a general creditor has no legally recognized interest in or right to interfere with the use of the unencumbered property of a debtor prior to obtaining judgment. Therefore, during the pendency of the action on the debt, even if the anticipated judgment might include permanent injunctive relief, the acts of the debtor in disposing of assets will not have “produce [d] [cognizable] injury to the plaintiff’ and thus will not support a temporary injunction (CPLR 6301).
 

 Justice Scalia in
 
 Grupo Mexicano
 
 articulated the critical distinction between an ultimate entitlement to a permanent injunction in the final judgment regarding a freeze on asset transfers, and the preliminary injunctive relief at issue in
 
 Grupo Mexicano
 
 and in this case:
 

 “A quite different situation obtains in the present case, where * *
 
 *
 
 the substantive validity of the final injunction does
 
 not
 
 establish the substantive validity of the preliminary one. For the latter was issued not to enjoin
 
 unlawful
 
 conduct, but rather to
 
 render
 
 unlawful conduct that would otherwise be permissible, in order to protect the anticipated judgment of the court; and it is the essence of petitioners’ claim that such an injunction can be issued only after the judgment is rendered” (527 US, at 315 [emphasis in the original]).
 

 Third, the only apparent basis for the alleged fiduciary duty owed plaintiffs here arises out of the so-called “trust fund doctrine” by virtue of which the officers and directors of an insolvent corporation are said to hold the remaining corporate assets in trust for the benefit of its general creditors
 
 (see, New York Credit Men’s Adj. Bur. v Weiss,
 
 305 NY 1, 7;
 
 see also, Ward v City Trust Co.,
 
 192 NY 61, 74; Beveridge,
 
 Does a Corporation’s Board of Directors Owe a Fiduciary Duty to its Creditors?,
 
 25 St Mary’s LJ 589, 592 [1994]; Varallo and Finkelstein,
 
 Fiduciary Obligations of Directors of the Financially Troubled Company,
 
 48 Bus Law 239, 244 [1992]). Nevertheless, our courts have never deviated from the prevailing majority rule that the trust fund doctrine does not automatically ere-
 
 *550
 
 ate an actual lien or other equitable interest as such in corporate assets upon insolvency
 
 (see, Hollins v Brierfield Coal & Iron Co.,
 
 150 US 371, 381, 383;
 
 In re MortgageAmerica Corp.,
 
 714 F2d 1266, 1269 [5th Cir]).
 

 The application of the trust fund doctrine in New York customarily has been for the purpose of imposing liability on corporate directors or transferees for wrongful dissipation of assets of an insolvent corporation, in actions later brought by court-appointed receivers, trustees in bankruptcy or judgment creditors
 
 (see, New York Credit Men’s Adj. Bur. v Weiss, supra; Buttles v Smith,
 
 281 NY 226;
 
 Trotter v Lisman,
 
 209 NY 174). Most significantly with respect to the possible application of the trust fund doctrine in the context of this case, we have followed the general rule that a simple contract creditor may not invoke the doctrine to reach transferred assets before exhausting legal remedies by obtaining judgment on the debt and having execution returned unsatisfied
 
 (see, Hollins v Brierfield Coal & Iron Co., supra,
 
 150 US, at 380-381;
 
 Buttles v Smith, supra,
 
 at 235-236;
 
 Trotter v Lisman, supra,
 
 at 179). This militates heavily against the use of the trust fund doctrine by a general creditor, having no cognizable interest in the debtor’s property, to get a preliminary injunction in aid of a money judgment not yet obtained.
 

 Finally, plaintiffs argue that even if New York has not up to now authorized the issuance of a temporary injunction to protect a general creditor suing on an unsecured debt from the debtor’s divestiture of the assets necessary to satisfy the anticipated judgment, we should now liberalize and expand the remedies available under CPLR 6301 to permit courts to grant that relief. Plaintiffs urge that this is necessary in response to the increased globalization of capital markets, New York’s preeminent position in those markets and the advances in technology facilitating ever faster transfer of funds. Plaintiffs suggest we follow the example of the English courts that, since the 1975 decision by the Court of Appeal in
 
 Mareva Compania Naviera v International BulkCarriers
 
 (2 Lloyd’s Rep 509), have provided protection to general creditors from the risk of a debtor’s dissipation of assets to frustrate satisfaction of an anticipated money judgment.
 

 Justice Scalia, in
 
 Grupo Mexicano (supra,
 
 527 US, at 328-329), and others
 
 (see, e.g.,
 
 Sibley and Smith,
 
 Taking a Lesson From English Courts on Restricting the Movement of Assets,
 
 NYLJ, Nov. 16, 1998, at 1, col 1) have cogently described the profound effects that the availability of world-wide
 
 Mareva
 
 
 *551
 
 preliminary injunctions would have on world-wide commerce. That is, the widespread use of this remedy would drastically unbalance existing creditors’ and debtors’ rights under the present Federal and State statutory and decisional schemes, and substantially interfere with the sovereignty and debtor/ creditor/bankruptcy laws of, and the rights of interested domiciliarles in, foreign countries. At the very least, the availability of such a powerful, discretionary provisional remedy, even when that discretion is exercised by courts with caution and restraint, would introduce uncertainty in results which the present
 
 Campbell v Ernest
 
 bright-line rule — more readily permitting investors accurately to assess likely risks, and to adjust interest rates accordingly — avoids.
 

 Finally, when asked to exercise inherent judicial powers to impose significant innovations in the field of provisional remedies, we have previously determined that the balancing of important competing interests and crafting of appropriate safeguards and standards to ensure that the balance is fairly administered in the individual case, are “task[s] best left to statutes and rules rather than ad hoc judicial decision-making”
 
 (Uniformed Firefighters Assn. v City of New York,
 
 79 NY2d 236, 241). The same self-restraint and deference to a legislative solution applies here, where judicial innovation may have far-reaching impact on the existing balance between debtors’ and creditors’ rights
 
 (see, Grupo Mexicano de Desarrollo v Alliance Bond Fund, supra,
 
 527 US, at 322-323, 333).
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, plaintiffs’ motion for a preliminary injunction denied and certified question answered in the negative.
 

 Chief Judge Kaye and Judges Bellacosa, Smith, Ciparick, Wesley and Rosenblatt concur.
 

 Order, insofar as appealed from, reversed, etc.
 

 *
 

 Indeed, the legislative history suggests, if anything, a restrictive rather than expansive objective in the drafting of CPLR 6301 regarding prejudgment injunctions to prevent asset transfers. Thus, Civil Practice Act § 878 (2) (the equivalent of former Code of Civil Procedure § 604 [2] discussed in
 
 Campbell v
 
 Ernest) was eliminated in favor of the remedy of attachment
 
 (see,
 
 Third Prelim Report of Advisory Comm on Practice and Procedure, 1959 NY Legis Doc No. 17, at 150).