**ECOBAN FINANCE LIMITED,**
Plaintiff,

v.

**GRUPO ACERERO DEL NORTE,**
**S.A. DE C.V., Defendant.**

**Ecoban Finance Limited, Plaintiff,**

v.

**Altos Hornos De Mexico, S.A.**
**De C.V., Defendant.**

**Nos. 99 CIV. 10201(AKH),**
**99 CIV. 10202(AKH).**

United States District Court,
S.D. New York.

Aug. 8, 2000.

350

Gilbert A. Samberg, Todtman, Nacha-mie, Spizz & Johns, P.C., New York, NY, for plaintiff.

Gerald J. Fields, Battle Fowler, New York, NY, for defendant.

### MEMORANDUM & ORDER DISMISSING CREDITOR'S CLAIMS BECAUSE OF COMITY

HELLERSTEIN, District Judge.

Plaintiff Ecoban Finance Limited filed this lawsuit to collect on a series of past-due promissory notes totaling $18 million. Ecoban is a New York corporation, and purchased the notes from defendants in Mexico. The notes provide that the parties consent to the jurisdiction of the courts of New York and Mexico for disputes arising thereunder, and that the law of New York will govern the notes unless suit is brought in Mexico, in which case Mexican law will govern.

Defendants are Mexican corporations. Grupo Acerero del Norte, S.A. de C.V. ("GAN") is a conglomerate, and Altos Hornos de Mexico, S.A. de C.V. ("AHMSA") is its subsidiary and Mexico's largest steel producer. Both are parties to Suspension of Payments (*"Suspensión de Pagos"*) proceedings in the Mexican courts,[1] proceedings, much like our Chapter 11 bankruptcy proceedings, intended to relieve debtors from the immediate pressure of creditors' claims and suits in order that they can reorganize their affairs, restructure their debts, and ultimately pay them.

Defendants AHMSA and GAN move to dismiss Ecoban's suits in this Court, pursuant to Fed.R.Civ.P. 12(c). They ask me, for reasons of international comity, to defer to the Mexican proceedings and the stay of creditors' actions that are a feature of those proceedings. I grant defendants'

---

1. The *Suspensión de Pagos* ("SOP") proceedings are authorized under Title VI of the *Ley de Quiebras y Suspensión de Pagos* ("Law of Bankruptcy and Suspension of Payments") of Mexico. Plaintiff asserts that this law has recently been repealed and replaced by updated and more equitably balanced Mexican legislation, but concedes that the old law still applies to the SOP's of AHMSA and GAN. While these events may evidence Mexican dissatisfaction with the SOP, they do not directly bear on the inquiry this Court must make in deciding whether comity is appropriate in this case. *See infra.*

motions and dismiss the complaints. Having examined the Mexican law on SOP's, and considered expert reports from each side,[2] I hold that the SOP's are not fundamentally procedurally unfair, or in violation of American public policy, and that comity is appropriate in the circumstances of these cases.

## I. Background

Between August and September 1997, GAN issued a series of eleven promissory notes in favor of Ecoban, payable in August and September 1999, in the aggregate amount of $15,000,000. On June 30, 1998, AHMSA issued three more promissory notes in favor of Ecoban, payable on July 6, 1999, in the aggregate amount of $3,000,000. Ecoban alleges that the notes are past due and entirely unpaid, and brought these suits to recover the $18 million due to it.

Defendants, in consequence of alleged adverse economic conditions and a decline in steel prices during 1998 and 1999 causing them financial distress, petitioned the Third Bankruptcy Court of Mexico City on May 18, 1999, in the case of GAN, and the Court of First Instance in Moclova, Mexico on May 24, 1999, in the case of AHMSA, for protection against creditors under the Mexican Suspension of Payments laws. GAN's and AHMSA's petitions were granted on May 24 and 25, 1999, respectively.

In brief, by these laws, Mexican courts are authorized to assist a debtor to avoid bankruptcy liquidation. When an SOP is filed, and the debtor is adjudged to be in suspension of payments by a Mexican court, debt collection actions against the debtor are stayed, and the debtor is pre-cluded from making further payments to specific creditors. *See L.Q.S.P.* Art. 408–09 (Mex.) The debtor proposes a preventive agreement with its filing, *see id.* Art. 398, and, following notice to all creditors, the process of asserting and then adjudicating the legitimacy of individual claims begins. *See id.* Art. 405—407. A *sindico*, that is an appointee performing the functions of a caretaker or trustee, is appointed to supervise the debtor, and is charged with reporting illegal or inequitable conduct to the court, which has the power to force the offending debtor into liquidation. *See id.,* Art. 405, 416. The creditors have the power to appoint intervenors, *see id.,* Art. 417, and after the legitimacy of all claims is considered, the creditors meet to approve or reject the preventive agreement. If an agreement cannot be reached, the debtor is forced into liquidation. *See id.,* Art. 419. An agreement cannot be "crammed down," as is sometimes the case in American proceedings. *See* 11 U.S.C. § 1129(b)(1); 4 Daniel R. Cowans, *Bankruptcy Law and Practice* ¶ 20.27 (6th ed.1994). In general, an SOP resembles an American Chapter 11 reorganization.

## II. Comity is Ordinarily Granted to Foreign Bankruptcy Proceedings

Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164, 16 S.Ct. 139, 40 L.Ed. 95 (1895). It is particularly appropriate and important with respect to foreign bankruptcy pro-

---

**2.** Under Fed.R.Civ.P. 44.1, questions of foreign law are questions of law, not fact, and I may consider any relevant evidence of foreign law, whether or not it comports with the Federal Rules of Evidence. *See* Fed.R.Civ.P. 44.1; *Euromepa, S.A. v. R. Esmerian, Inc.,* 154 F.3d 24, 28 n. 2 (2d Cir.1998). Accordingly, I have requested and reviewed expert reports from both sides on the nature of the SOP, and have independently reviewed the Mexican *Ley de Quiebras y Suspensión de Pagos.* Plaintiff offers the opinion of Jose Maria Abascal, Esq., an experienced attorney and professor of law, and defendants offer the opinion of Jamie Garcia Priani, Esq., who has equally impressive qualifications as a lawyer and scholar. *See* Report of Jose Maria Abascal, Esq.; Declaration of Jamie Garcia Priani.

ceedings, where equitable principles demand that all claims against a debtor's limited assets be addressed in a single proceeding. *See Finanz AG Zurich v. Banco Economico, S.A.*, 192 F.3d 240, 246 (2d Cir.1999) (granting comity to Brazilian liquidation proceeding); *Allstate Life Insurance Co. v. Linter Group, Ltd.*, 994 F.2d 996, 999 (2d Cir.1993) (Australian liquidation proceeding); *Victrix Steamship Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir.1987) (Swedish bankruptcy); *Cunard Steamship Co. v. Salen Reefer Services AB*, 773 F.2d 452, 458 (2d Cir.1985) (Swedish bankruptcy). Consequently, "American courts regularly defer to such actions." *Finanz AG*, 192 F.3d at 246.

■ The decision, whether or not to grant comity, is to be determined under New York state law. There is diverse citizenship between plaintiff, a New York corporation, and defendants, Mexican, that is, foreign, corporations. *See* 28 U.S.C. § 1332(a)(2). As subject matter jurisdiction in this matter is premised on diversity of citizenship, New York law governs. *See Drexel Burnham Lambert Group v. A.W. Galadari*, 777 F.2d 877, 880 (2d Cir.1985); *Cunard*, 773 F.2d at 457.[3] But whether under federal law or New York law, the rule appears to be the same. Under New York law, courts will defer to foreign bankruptcy proceedings unless the foreign court lacks jurisdiction over the bankrupt, or the foreign proceeding will result in injustice to New York citizens, prejudice to

creditors' New York statutory remedies, or violation of the laws or public policy of New York. *See In re Waite*, 2 N.E. 440, 449, 99 N.Y. 433, 448 (N.Y.1885); *SNR Holdings, Inc. v. Ataka America, Inc.*, 54 A.D.2d 406, 388 N.Y.S.2d 909, 911 (1st Dept.1976); *Cole v. Cunningham*, 133 U.S. 107, 122–23, 10 S.Ct. 269, 33 L.Ed. 538 (1890) (discussing New York law); *Drexel*, 777 F.2d at 880 (same); *Clarkson Co. v. Shaheen*, 544 F.2d 624, 629 (2d Cir.1976) (same). Federal law is to the same effect. *See Finanz AG*, 192 F.3d at 246. In short, comity should be granted to a foreign bankruptcy (or SOP) proceeding as long as fundamental standards of procedural fairness are observed, and state or federal law and public policy are not violated. *See id.* As discussed below, no exceptions to the exercise of comity are applicable in this case.

## III. Comity is Appropriate in this Case

■ It is undisputed that the Mexican courts are of competent jurisdiction, and indeed that Ecoban has, up to this point, participated in the SOP actions in Mexico. The only questions remaining are whether the SOP respects fundamental procedural fairness, and whether it violates federal or New York state law and policy. In my opinion, the Mexican law does not violate fundamental principles of procedural fairness, or the public policy of New York or of the United States, and I therefore hold that comity should be extended to the SOP's.[4]

---

**3.** The parties have proceeded under the assumption that federal law governs the issue of comity. Proving the old adage about what happens when one assumes, however, Second Circuit precedent, as noted above, is to the contrary. The parties rely on recent Second Circuit cases such as *Finanz AG* and *Allstate Life Insurance*, which apply federal law to the issue of comity. In neither of these cases, however, was subject matter jurisdiction apparently based on diversity. *See Finanz AG*, 192 F.3d at 245 (finding subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1330); *Allstate Life Insurance Co.*, 994 F.2d at 998 (discussing federal law claims on which actions were based). Neither case discusses choice

of law issues, and neither holding upsets the rule of *Drexel* and *Cunard*, that state law comity principles apply in cases where subject matter jurisdiction is based on diversity. *See* Robert Laurence, *The Role, If Any, for the Federal Courts in the Cross–Boundary Enforcement of Federal, State and Tribal Money Judgments*, 35 Tulsa L. Rev 1, 21 (1999); Martin N. Flicks and Michael J. Ireland, *Bankruptcy and the Problems of Multi–Jurisdictional Workouts*, 592 PLI/Comm. 415, 449 (1991).

**4.** The parties make reference to the eight illustrative factors regarding procedural fairness as laid out in *Allstate Life Insurance*, 994 F.2d at 999. These factors generally indicate

As the discussion of the SOP procedures above suggests, it is clear that creditors are given a legitimate opportunity to make their claims, and are afforded with avenues through which grievances may be raised and addressed during the SOP process. Nothing in the Mexican law indicates that the ability of foreign creditors to participate in the process is in any way limited, or that such creditors are otherwise treated differently from Mexican creditors. Nor do I find anything inherently unfair about the SOP process. It is true, of course, that through suspending debt payments and collection actions, and forcing the parties to renegotiate, the SOP could affect plaintiff's ability to collect on its promissory notes in full and when due. But this is not significantly more true in the Mexican SOP than it is in any bankruptcy setting, including American Chapter 11 reorganizations. Though some of the Mexican procedures may differ significantly from their American counterparts, it is not necessary for this Court to "split hairs to determine that the [Mexican] law, in general, provides a fair forum in which to litigate [plaintiff's] claims." *Allstate Life Insurance*, 994 F.2d at 999. It suffices to say that nothing in the Mexican law is so prejudicial as to offend the public policy of New York or the United States.

Indeed, plaintiff largely concedes the fairness of the Mexican law as written, and instead claims that American public policy is violated by the operation of the SOP in practice. Specifically, plaintiff, through its expert, contends that SOP adjudications can last up to 10 years, and that this potential for long delay in debt recovery forces major creditors to accept unfavorable terms on renegotiation, or risk no effective recovery at all. Defendants' expert disputes this assertion, claiming that most SOP's are in fact completed in one to three years. *See* Parini Reply Declaration § 5. I needn't resolve this difference. These matters are complicated, and many competing interests have to be balanced. Whether in a chapter 11 proceeding in our courts, or an equivalent proceeding in a foreign court, the potential for delay exists, and perhaps more delay than would be ideal. I do not find this potential offensive to the law or public policy of New York or the United States. Plaintiff does not claim any specific prejudice and, to the extent that AHMSA and GAN may soon emerge from suspension of payments, as plaintiff has asserted in oral argument and in various letters and submissions to the court, plaintiff's argument is even more speculative and less meritorious.

Along similar lines, plaintiff argues that AHMSA and GAN entered the SOP not because of financial or cash flow difficulties, but in a bad faith effort to force its major creditors to renegotiate their loans and thereby make AHMSA and GAN more attractive to potential merger partners. Allowing the Mexican companies to "get away with" this scheme, Ecoban urges, would violate American public policy. The proper inquiry on a comity motion, however, is not into the motives of a debtor in the foreign proceeding, but into the foreign court's ability to address, and redress, improper conduct. I am satisfied that there are sufficient opportunities for the creditors of AHMSA and GAN to raise the debtors' alleged bad faith and inequitable conduct before the Mexican tribunals hearing the SOP's, and those are the appropriate venues for plaintiff to do so.[5]

that the foreign procedures must provide adequate notice and opportunity to be heard, and must treat equal creditors equally, but most of the factors contemplate a liquidation and are not clearly relevant or applicable in the context of an SOP.

5. Submissions to the Court made subsequent to oral argument in this matter indicate that one aggrieved GAN creditor succeeded in overturing GAN's declaration of suspension of payments before the Superior Court of Justice of the Federal District of Mexico, a Mexican appellate court. By order dated June 20, 2000, that court vacated GAN's SOP declaration on the ground that GAN's proposed preventive agreement had not been previously approved by GAN shareholders, as required by Mexican law. *See* Opinion of Jose Maria

Equally without merit is plaintiff's claim that comity is inappropriate because the promissory notes contain a forum selection clause designating New York as a forum for dispute resolution. It is well settled in this Circuit that such forum selection clauses will not preclude the exercise of comity. *See Finanz AG,* 192 F.3d at 247; *Allstate Life Insurance,* 994 F.2d at 1000. I also reject plaintiff's contention that the early conversion of plaintiff's claims into Mexican pesos under the SOP violates public policy. While it is true that a conversion procedure may be fundamentally unfair if it "would render a debt unenforceable or valueless," *Finanz AG,* 192 F.3d at 250, there is no reason to believe that this would be the case here. As the Second Circuit observed in *Finanz AG,* this provision for early conversion of claims is found in American bankruptcy law as well, *see id.;* 11 U.S.C. § 502(b), and absent the circumstance discussed above, nothing about such a procedure violates New York or United States public policy.

## IV. Conclusion

In the end, we are left with the simple case of an American creditor of a Mexican corporation asking this Court to give it a preference over other creditors by releasing it from the obligations imposed by Mexican bankruptcy law. Principles of international comity and a strong public policy favoring the administration of all claims against a debtor in a single forum preclude this Court from doing so. *See Cunard,* 773 F.2d at 459; *see also Credit Agricole Indosuez v. Rossiyskiy Kredit Bank,* 94 N.Y.2d 541, 551, 708 N.Y.S.2d 26, 729 N.E.2d 683 (N.Y.2000) (following *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund,* 527 U.S. 308, 119 S.Ct. 1961,

144 L.Ed.2d 319 (1999), in holding that prejudgment creditor may not enjoin foreign debtor from dissipating assets, and disapproving of contrary practice of English courts under *Mareva Compania Naviera S.A. v. International Bulkcarriers S.A.,* 2 Lloyd's Rep. 509). The public policy and procedural fairness exceptions to the exercise of comity, under both New York and federal law, are intended as shields to protect American citizens and corporations from fundamentally unfair treatment abroad. They are not swords to be wielded by American creditors to frustrate and evade foreign bankruptcy laws.

As the Supreme Court observed over a century ago, in the context of a foreign bankruptcy reorganization:

> [E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts, as the known and established policy of that government authorizes. To all intents and purposes, he submits his contract with the corporation to such a policy of the foreign government, and whatever is done by that government in furtherance of that policy, which binds those in like situation with himself, who are subjects of the government, in respect to the operation and effect of their contracts with the corporation, will necessarily bind him .... It follows, therefore, that anything done at the legal home of the corporation, under the authority of such laws, which discharges it from liability there, discharges it everywhere.

*Canada Southern Ry. Co. v. Gebhard,* 109 U.S. 527, 537–38, 3 S.Ct. 363, 27 L.Ed. 1020 (1883).

Abascal, Esq. dated July 11, 2000, Exh. 1, 2. The order vacating the GAN SOP, however, was stayed pending GAN's appeal by order of the Superior Court dated June 28, 2000. As a result of this stay, the GAN SOP remains in effect, and proceedings continue. *See* Declaration of Jaime Rene Guerra Gonzalez §§ 9–10, Exh. C. Because GAN's SOP proceedings

continue in Mexico, these events do not alter my comity analysis. In the event that a final judgment dismissing GAN's SOP petition is entered in Mexico, Ecoban will, of course, be free to re-file its claims in this Court. These proceedings, it appears, contradict plaintiff's argument that Mexican practice is ineffective to challenge a debtor's bona fides.

In dealing with Mexican corporations, Ecoban can and must be charged with knowledge of the *Suspensión de Pagos,* a law that has been on the books since 1943. *See* Priani Reply Decl. § 2. Ecoban's unhappiness with the results produced by that law is not a legitimate ground for denying the laws and courts of Mexico the comity to which American legal precedent and basic principles of international cooperation entitle them.

For the foregoing reasons, defendants' motion is granted, and plaintiff's complaints are dismissed on the ground of international comity. All attachments issued by the Court in these matters are dissolved, and all pending motions are denied as moot. The Clerk of Court is directed to mark these matters closed.

SO ORDERED.