**In re AEROVIAS NACIONALES DE COLOMBIA S.A. AVIANCA and AVIANCA, INC., Debtors.**

**Nos. 03–11678 (ALG), 03–11679(ALG).**

United States Bankruptcy Court, S.D. New York.

July 12, 2006.

Smith, Gambrell & Russell, LLP, by Ronald E. Barab, Brian P. Hall, Laura E. Woodson, Atlanta, GA, for Debtors.

## MEMORANDUM OF OPINION DISALLOWING COLOMBIAN CLAIMS AND GRANTING COMITY TO PROCEEDINGS IN COLOMBIA

ALLAN L. GROPPER, Bankruptcy Judge.

Before the Court is a motion by the reorganized debtor, Aerovias Nacionales de Colombia S.A. Avianca (the "Debtor"), to disallow claims filed by Colombian claimants (the "Claims"). The Debtor is an airline organized under the laws of the Republic of Colombia that provides passenger and cargo service internationally

and within Colombia. Together with its wholly-owned United States subsidiary, Avianca Inc., the Debtor filed a Chapter 11 petition in this Court on March 21, 2003. After the filing, questions were raised by certain non-Colombian creditors regarding the propriety of U.S. court jurisdiction over the case of a company whose center of main interests was abroad, where foreign creditors outnumbered the domestic creditors, and where the Debtor did not file a proceeding in Colombia. In *In re Aerovias Nacionales de Colombia S.A. Avianca*, 303 B.R. 1 (Bankr.S.D.N.Y.2003), this Court found that the Debtor had sound reasons for its choice of venue, and it sustained the Debtor's filing, held that this was an appropriate case for the exercise of jurisdiction, and denied the motion to dismiss. It bears noting that no Colombian creditors at that, or any later time, filed an objection to the Court's exercise of jurisdiction and that there were virtually no incidents where creditors in Colombia violated the stay of § 362 of the Bankruptcy Code. The Debtor eventually confirmed a plan of reorganization on November 24, 2004, pursuant to which it was acquired by a third party.

The matter at hand involves a claims resolution process designed to afford fair and transparent procedures to all of the Debtor's creditors, including those located in Colombia. The great bulk of the claims filed by Colombian creditors were brought by trade creditors or by present or former employees asserting employment or labor-related claims. In order to quantify these and all other claims, the Debtor entered a "bar order" which was sent to creditors in Colombia in Spanish and creditors elsewhere in English. Non–Colombian creditors were required to file claims with the Debtor's claims agent in the United States; for Colombian creditors, arrangements were made for claims to be sent to an agent in Colombia for eventual transmission to the United States.

In light of the large number of claims filed by Colombian creditors asserting labor-related claims, the Court then entered an order entitled Procedures for Resolution of Objections to Claims Filed by Colombian Labor Claimants, dated April 25, 2005 (the "Procedures Order"). The Procedures Order set forth principles for the resolution of the objections filed by the Debtor to the Colombian labor claims. Such claims were first divided into four categories: (i) defaulted labor claims where no Colombian judicial determination had been issued and no Colombian proceeding was pending; (ii) labor claims (whether or not defaulted) that had been litigated to final and binding judgment by the Colombian courts; (iii) labor claims (whether or not defaulted) that had been satisfied in full, either as a convenience claim under the Chapter 11 plan or pursuant to judicial decision in Colombia; and (iv) labor claims (whether or not defaulted) subject to pending claims objections that had not been satisfied or were not subject to a final order in Colombia.[1]

The Procedures Order then provided that the Debtor could move to disallow an individual labor claim in the first three claim categories by submitting grounds for such disallowance supported by an affidavit from Debtor's Colombian counsel (in English) in support of a proposed order.[2] The holder of the claim would then have

---

1. Different procedures governed claims for pension benefits that had not been previously adjudicated by a Colombian judgment or order.

2. The Debtor's affidavit had to include the following information: (i) for the defaulted labor claims where no Colombian judgment had been issued and no Colombian proceeding was pending ("Category One Claims"), the affidavit had to indicate that the Colombi-

thirty days to file a response in Colombia explaining why the Court should not disallow the claim.[3] In the event that the claim holder did not file a response, the Court would rule on the claim disallowance.[4] If the holder of the claim did file a response with the Debtor's Colombian agent, however, the Colombian agent had to date-stamp the response and the Debtor had to file a copy of the response and an accompanying English translation with this Court, as well as deliver a copy to the Creditors Representative's counsel. The Court would then issue a written ruling on the claim, and the amount determined by the Court would become the allowed amount of the claim for purposes of classification and distribution under the plan of reorganization.

The procedures for claims falling into category four, or labor claims (whether or not defaulted) subject to pending claim objections that had not been satisfied or were not subject to a final order in Colombia, were slightly different. Such claim holders were permitted to commence or continue actions in the appropriate Colombian court of competent jurisdiction or other tribunal for the sole purpose of determining the validity or the amount of the claim. If the matter were litigated to a final and binding judgment, the claim would then be treated as a Category Two Claim.

Numerous Claims are now before the Court for resolution where the Claimant has responded to the Debtor's objection. In each case, the Claimant submitted a written response, which the Debtor, in turn, submitted to the Court, together with a certified English translation if the response was not in English. The Claimants set forth one or more of the following grounds why the ruling of the Colombian court or administrative body should not be recognized and why their Claims should not be rejected in accordance with the proceedings in Colombia: (1) Colombian law, as applied by the Colombian court or administrative body, is not applicable to proceedings before this Court because such law only applies within Colombia; (2) the Colombian law, applied by the Colombian court or administrative body to determine the Claim, is not fair; (3) the Colombian system of justice is not impartial; and (4) the Colombian judgment or order was erroneous. In reply, the Debtor asserts that grounds have not been shown why the proceedings in Colombia should not be respected. For the reasons stated below, the Court grants the Debtor's motion.

## DISCUSSION

■■■ The leading case on the question whether a controversy should be deter-

---

an statute of limitations had expired for such claim and explain the basis for such a determination under Colombian law; (ii) for the labor claims (whether or not defaulted) that had been litigated to final and binding judgment by Colombian courts ("Category Two Claims"), the affidavit had to attach a Spanish copy of the judgment or order with the basis for the decision and the amount, if any, awarded to the claim holder and state whether the judgment specified the form of payment for such judgment; and (iii) for labor claims (whether or not defaulted) that were satisfied in full due to judicial decision in Colombia or payment as a convenience claim ("Category Three Claims"), the affidavit had to describe fully the satisfaction of the claim.

3. For categories one through three, the claim holder could respond by showing (i) that the holder was not in default or that the applicable limitations period had not expired; (ii) why the judgment issued should not be binding on such holder; and (iii) why the claim had not been satisfied in full.

4. The Plan of Reorganization creates a "Creditors Representative" to succeed to some of the prerogatives of the Creditors Committee. The Procedures Order also provides that the Court can rule only after at least ten days' written notice of the proposed order to counsel to the Creditors Representative.

mined by the Bankruptcy Court or another tribunal is *Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (1990). There, the Second Circuit listed twelve factors for a court to consider in determining whether to defer to another tribunal for the liquidation of a bankruptcy claim:

(1) whether relief would result in a partial or complete resolution of the issue;

(2) lack of any connection with or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interest of the creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether the movant's success in the other proceeding would result in a judicial lien avoidance by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of harms.

*Id.* at 1286; see also *Schneiderman v. Bogdanovich (In re Bogdanovich)*, 292 F.3d 104, 110 (2d Cir.2002). "Not all of these factors will be relevant in every case," *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir.1999), and a court need not give equal weight to each factor. *In re Burger Boys, Inc.*, 183 B.R. 682, 688 (S.D.N.Y.1994).

■ An examination of these factors demonstrates that nearly all of them point to adjudication of the labor claims in Colombia. Thus, there is little connection between the claim and the Chapter 11 case as a whole (factor 2); the Colombian tribunals have the expertise and experience to hear the issues, as this Court decidedly does not (factor 4); litigation in Colombia would not prejudice the creditor body generally, and the Creditors Representative consented to the Procedures Order (factor 7); and the interests of judicial economy and the expectations and economical resolution of litigation point to resolution of these Colombian claims in Colombia (factor 10). No factor points to resolution of the claims in the United States or in this Court, as was implicitly determined when the Procedures Order was entered.

■ A further factor pointing to the resolution of the claims in Colombia is that Colombian law governs the issue whether the Claimants have a claim against the Debtor and, if so, for how much. The Debtor is asking this Court to disallow Claims by deferring to the findings of the Colombian courts that substantively adjudicated the Claims under Colombian law. Some Claimants argue that Colombian law should only be applied within Colombia and that this Court cannot refer to the Colombian courts' adjudication of the Claims. However, the U.S. courts frequently apply foreign law, and they have also clearly rejected the premise that "choice of law analysis is never appropriate in a bankruptcy case." *Maxwell Communication Corp. v. Societe Generale (In re Maxwell Communication Corp.)*, 93 F.3d

1036, 1049 (2d Cir.1996).[5]  In this bankruptcy case, the conflicts rule is "to apply the law of the jurisdiction having the greatest interest in the litigation," in order "to evaluate the various contacts each jurisdiction has within the controversy, and determine which jurisdiction's laws and policies are implicated to the greatest extent." *Koreag, Controle et Revision S.A. v. Refco F/X Assocs., Inc. (In re Koreag, Controle et Revision S.A.)*, 961 F.2d 341, 350 (2d Cir.1992); see also *French v. Liebmann (In re French)*, 440 F.3d 145, 149–50 (4th Cir.2006) (listing participants, acts and effects of a transaction as factors to be considered in making choice of law determinations in a bankruptcy case).

There is no question that Colombia has the greatest interest in the labor disputes at hand and that its laws are appropriate to adjudicate the Claims.  All of the Claims subject to this motion involve labor disputes that have little, if any, contact with New York. By contrast, the participants, acts and effects involved in the underlying labor dispute all have significant contacts with Colombia.  Moreover, the determination of individual labor disputes can be viewed as particularly "local" in nature and touching "concerns deeply rooted in local feeling and responsibility." *Palm Beach Co. v. Journeymen's and Prod. Allied Servs. of America and Canada Int'l Union Local 157*, 519 F.Supp. 705, 713 (S.D.N.Y.1981).

■ A claim determination by a non-bankruptcy court in the United States would seemingly be conclusive as to the issues determined, for bankruptcy purposes, based on *res judicata* or collateral estoppel grounds. See *Kelleran v. Andrijevic*, 825 F.2d 692 (2d Cir.1987).  A similar result should ordinarily apply to the determinations of foreign courts by virtue of principles of comity.  *Hilton v. Guyot*, 159 U.S. 113, 163–64, 16 S.Ct. 139, 40 L.Ed. 95 (1895), sets out the classic definition of comity:

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition which nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.

United States courts will ordinarily defer to foreign proceedings so long as "the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir.1999), quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir.1987); see also *International Transactions Ltd. v. Embotelladora Agral Regiomontana*, 347 F.3d 589, 594 (5th Cir. 2003) (to obtain recognition, foreign procedures must provide "a system compatible with the requirements of due process of law"); *In re Hackett*, 184 B.R. 656, 658 (Bankr.S.D.N.Y.1995); *In re Gee*, 53 B.R. 891, 901 (Bankr.S.D.N.Y.1985).

U.S. courts have frequently granted comity in cases involving foreign insolvency proceedings.  See, e.g., *Ecoban Fin. Ltd. v. Grupo Acerero del Norte, S.A. de C.V.*, 108 F.Supp.2d 349, 352–53 (S.D.N.Y. 2000), *aff'd*, 2 Fed.Appx. 80 (2d Cir.2001), *cert. denied*, 534 U.S. 814, 122 S.Ct. 39, 151 L.Ed.2d 12 (2001); *Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d at 246; *Cunard S.S. Co. v. Salen Reefer Servs. AB*

---

5.  The argument in *Maxwell Communication Corp.*, in any event, was that U.S. law (not foreign law) should invariably apply in a U.S. bankruptcy proceeding.

*(In re Cunard)*, 773 F.2d 452, 457 (2d Cir.1985). They have also granted comity to foreign proceedings in determining issues arising in a Chapter 11 case where the underlying conduct took place abroad. In *Maxwell Communication Corp.*, the dispute involved alleged preferential transfers, and the Second Circuit concluded that England had a "much closer connection to these disputes than does the United States," that England had a greater interest in the application of its rule of law, that the U.S. bankruptcy court should forbear from applying its own laws, and that comity should be granted to the English proceedings. 93 F.3d at 1051–53. As noted above, the Court, in particular, rejected the contention that U.S. law should apply automatically. *Id.* at 1049.

The same reasoning leads to the conclusion that Colombian law and the determinations of the Colombian courts should, in principle, govern the determination of these Colombian labor claims. The remaining issue is whether it has been demonstrated that "the foreign court is a court of competent jurisdiction, and that the laws and public policy of the forum state and the rights of its residents will not be violated." *Cunard S.S. Co. v. Salen Reefer Servs. AB (In re Cunard)*, 773 F.2d 452, 457 (2d Cir.1985); see also *Ecoban Fin. Ltd. v. Grupo Acerero del Norte, S.A. de C.V.*, 108 F.Supp.2d 349, 352–53 (S.D.N.Y. 2000), *aff'd*, 2 Fed.Appx. 80 (2d Cir.2001), *cert. denied*, 534 U.S. 814, 122 S.Ct. 39, 151 L.Ed.2d 12 (2001) (key issue is whether "fundamental standards of procedural fairness are observed and state and federal law and public policy are not violated"). In the present circumstances, the Debtor has sufficiently established a *prima facie*

case that the Colombian proceedings should be recognized. Some of the Claimants contend, in effect, that the doctrine of international comity should not be extended to the judgments issued by the Colombian courts on two grounds: (i) the Colombian law applied by the Colombian courts to adjudicate the Claims is not fair, and (ii) the Colombian system of justice is not impartial. However, aside from a generalized complaint, no Claimant has stated with any specificity why the Colombian system of justice is not impartial or fair or what acts by the Colombian tribunals resulted in a lack of due process in the rendering of the judgments. The record instead shows that the Claimants initiated the Colombian proceedings to obtain a determination of labor claims that arose there, and no reason has been shown as to why there should be a different substantive result in the Colombian case because a U.S. Chapter 11 case intervened. The Claimants have failed to rebut the Debtor's *prima facie* case, and the foreign judgments should be recognized. See *Hilton*, 159 U.S. at 159–60, 16 S.Ct. 139, where the Court said that a judgment that appears to have been entered regularly by a competent court with jurisdiction over the defendant

> is prima facie evidence, at least, of the truth of the matter adjudged; and it should be held conclusive upon the merits tried in the foreign court, unless some special ground is shown for impeaching the judgment, as by showing that it was affected by fraud or prejudice, or that by the principles of international law, and by the comity of our own country, it should not be given full credit and effect.[6]

---

**6.** The same result would apply under the Uniform Foreign Judgments Recognition Act, 13 U.L.A. 417 (1980), adopted in New York as CPLR 5301–5309 (McKinney's 1986). See

Bishop & Burnette, *United States Practice Concerning the Recognition of Foreign Judgments*, 16 Int'l Law. 425, 438 (1982) ("when a properly authenticated judgment that is valid

## CONCLUSION

The Debtor is entitled to an order or orders sustaining the objections to the Claims, except that to the extent that a Claim includes a claim for pension benefits, the pension portion of the Claim will be reclassified as a Class 3 pension claim and paid in accordance with the Plan provisions governing such claims. The Debtor shall translate this Opinion into Spanish and shall serve copies on all of the Claimants to whose claims the Debtor has objected and which are governed by this Decision, together with a proposed order providing for the relief authorized hereby. In view of the location of the Claimants in Colombia, the order shall be settled on 30 days' notice.

on its face is presented, courts have generally presumed that the necessary requisites to recognition and enforcement of the judgment are met unless challenged by the defendant.").