■ REPUBLIC OF LEBANON, Respondent-Appellant, v SOTHEBY'S, Defendant, TRUSTEE OF THE MARQUESS OF NORTHAMPTON SETTLEMENT, Appellant-Respondent, and SOCIALIST FEDERAL REPUBLIC OF YUGOSLAVIA, Intervenor-Respondent-Appellant.— Order, Supreme Court, New York County (Carol E. Huff, J.), entered May 29, 1990, which, *inter alia,* granted plaintiff's motion for a preliminary injunction barring defendants from transferring possession or ownership of the Sevso Treasure or transporting it outside the City of New York, directed plaintiff and intervenor-defendant the Socialist Federal Republic of Yugoslavia to post a $14,000,000 bond to be divided equally between them, and denied defendant trustee's motion to dismiss the complaint pursuant to CPLR 327 on forum non conveniens grounds, unanimously modified in the exercise of discretion, to reduce the bond to $1,000,000, to be divided equally between the plaintiff and the Socialist Federal Republic of Yugoslavia, and is otherwise affirmed, without costs.

At issue in this action are the rights to possession and

ownership of the Sevso Treasure (Treasure), a collection of 14 antique Roman silver pieces crafted in the fourth or fifth century A.D., and believed to have been hidden in the seventh century until unearthed in the 1970's. The collection was delivered to the Swiss auctioneer and the art dealer Sotheby's AG. in 1989 by defendant, the Trustee of the Marquess of Northampton Settlement (hereinafter Trust), a trust organized under the laws of Guernsey, Channel Islands, United Kingdom, for the purposes of sale as a unit in Switzerland in the fall of 1990. Sotheby's rendered a presale estimate of the value of the Treasure of $70,000,000. By defendants' own admissions, there were complicated issues involved in establishing an unchallenged title upon the resale of Treasure, given its approximately 1,400-year concealment and the absence of any confirmed "find place". Although defendants believe the collection was unearthed somewhere in Lebanon in the 1970's, they undertook to inquire of the Cultural Attaches in the embassies in Switzerland of each of 29 nations which were within the borders of the Roman Empire in the fourth century A.D. whether the pieces were recorded as stolen property. Similar inquiries were addressed to UNESCO, Interpol, the International Stolen Art Register, Europa Nostra, and the International Council for Museums. Sotheby's also represented that should any claim arise, the Treasure would not be sold until that claim was resolved, and, as part of the procedure for insuring that any possible claims would be made prior to resale, issued a news release to the international media, containing the above information, on February 9, 1990, one day before an 11-day exhibition of the Treasure at Sotheby's New York opened, as part of defendants' marketing campaign designed to culminate in the fall 1990 sale.

Plaintiff Republic of Lebanon demanded return of the Treasure in New York on February 15, 1990. Sotheby's New York responded it had no intention of selling the Treasure while the Lebanese Government's claim was unresolved. On February 20, 1990, plaintiff obtained a temporary restraining order barring the transfer of possession or ownership of the Treasure and/or its transport outside New York County. It based its claim to possession and ownership upon defendants' admission that the Treasure was unearthed in Lebanon in the

1970's, and upon provisions of Lebanese law assertedly granting the Lebanese Government the absolute right to purchase antiquities discovered within its territory, and which barred sale to third parties or exportation without the Government's express authorization. Defendant Trust cross-moved to dismiss on the grounds of forum non conveniens, setting forth the basis for its claim of rightful possession and ownership no more competently than was stated in Sotheby's February 9, 1990 news release. Defendant failed to submit any purchase agreement, export license, or any other documentary proof establishing the circumstances surrounding acquisition of the Treasure or in support of its contention that proper export approvals had been obtained from the Government of Lebanon.

While these motions were pending, the Socialist Federal Republic of Yugoslavia moved to intervene, asserting its own claim to the Treasure based upon allegations that the Treasure had been unearthed in Yugoslavia in 1971, and upon provisions of Yugoslavian law assertedly vesting title to such antiquities in the government.

The IAS court granted the motion to intervene, granted plaintiff's motion for a preliminary injunction, directed Lebanon and Yugoslavia to post a bond in the amount of $14,000,000 to be divided equally between them, and denied the cross motion to dismiss on the ground of forum non conveniens.

The Supreme Court's denial of the cross motion for forum non conveniens dismissal was correct, since defendant Trust failed to meet its heavy burden of demonstrating plaintiff's choice of forum was an inappropriate one *(Banco Ambrosiano v Artoc Bank & Trust,* 62 NY2d 65, 74). New York, as the situs of the disputed Treasure, resulting from defendants' intentional transportation of the Treasure to this jurisdiction as an integral part of their campaign to market *and* to establish clear title, has a valid and compelling interest in resolving the conflicting claims of possession and ownership. Substantially all of the "inconvenience" involved in litigating this action in New York is inherent in the situation out of which the lawsuit arises *(Bata v Bata,* 304 NY 51, 57). It is clear that in any available forum, plaintiff would be a nonresident; indeed, none of the three claimants are residents of Switzerland, the forum proposed by defendant Trust.

Defendant Trust's claim that Switzerland or any other forum has substantially greater connections to this dispute than New York and that Swiss law will apply has not been

established upon this record *(Banco Ambrosiano v Artoc Bank & Trust,* 62 NY2d, *supra,* at 74). We note that litigating this action in New York will better serve the ends of justice than deferring to the proposed Swiss forum. New York permits more liberal discovery, which may be essential given the mystery surrounding the discovery of the Treasure, and also conducts its proceedings in the English language, a language with which more of the relevant documents are written than the German language, in which Swiss judicial proceedings in the Court of Zurich are conducted *(Silver v Great Am. Ins. Co.,* 29 NY2d 356).

The preliminary injunction was properly issued pursuant to CPLR 6301 and 7109 (a). Where denial of injunctive relief would render the final judgment ineffectual, the degree of proof required to establish the element of likelihood of success on the merits should be accordingly reduced *(Schlosser v United Presbyt. Home,* 56 AD2d 615). In the circumstances of this case, the equities lie in favor of preserving the status quo *(Danae Art Intl. v Stallone,* 163 AD2d 81). We also find the amount of the undertaking, $14,000,000, to have been inappropriate, based as it was upon speculation without any appropriate support. A bond in the sum of $1,000,000 is adequate, in the circumstances. Concur—Ross, J. P., Asch, Kassal and Wallach, JJ.