*355 OPINION OF THE COURT
Louise Gruner Gans, J.
In this CPLR article 78 proceeding, petitioners Gerald Mod-ell Inc. (GMI), Gem Financial Services, Inc. doing business as Gem Pawnbrokers (Gem) and Cash Depot, Inc. (Cash Depot) move, by petition and order to show cause, for the following relief: (i) an order enjoining and restraining respondents, Robert Morgenthau, as District Attorney of New York County, and the New York City Police Department, from releasing jewelry items seized pursuant to search warrants issued in a pending criminal matter, entitled People v Khan, until loan balances due to petitioners have been satisfied; and (ii) an order directing respondents to deposit such items with the New York City Property Clerk pending resolution of any claims thereto.
Proposed intervenors Bulgari Corp., William Goldberg Diamond Corp., James Martin Jewels, Ltd., Piaget, a division of Richemont North America, Inc., Graff Diamonds, Ltd. and Ciovane, Ltd. doing business as Piranesi[1] (the owners) cross-move for an order: (i) granting intervention, pursuant to CPLR 1012 (a) (3); (ii) vacating any temporary restraining order (granted in the order to show cause) barring certain jewelry from being returned to the owners; (iii) directing the return to Graff of jewelry owned by Graff; and (iv) dismissing the petition.
On March 13, 2003, petitioners and the owners entered into a “so ordered” stipulation, providing that:
“1) The jewelry being restrained pursuant to the court’s Order to Show Cause of this date shall be retained in the custody of Donald A. Palmieri, 580 Fifth Ave., New York, N.Y., 1003 [sic], with the understanding that for the purposes of this proceeding it shall be as if it was in the Police Property Clerk’s custody. Mr. Palmieri shall not dispose of the jewelry pending further order of the court.
“2) That the owners of the jewelry and their underwriters have the right to intervene and/or participate in this matter.”
Mr. Palmieri submitted to the jurisdiction of the court. Section *356 1 of the stipulation resolves the second form of relief sought. Thus, only the motion for a temporary preliminary injunction and the cross motions must be addressed.
I. Relevant Factual Background
This proceeding arises from the activities of Derek Khan, allegedly a fashion stylist who assists celebrity clients in developing a distinctive look. As relevant here, from January 14, 2003 through February 25, 2003, Khan received assorted pieces of jewelry from the owners allegedly for photography shoots with Nicole Kidman, Nicole Kidman and Richard Gere, and Nicole Kidman and Sarah Jessica Parker and for dressing other celebrity clients. Khan received the jewels pursuant to memorandum receipts, advice notes and consignment memoranda, usually for a period of one to four days.
James Martin Jewels Ltd. submits a fully executed consignment memorandum, dated February 25, 2003, describing three items of jewelry, two of which are crossed out. The remaining item is described as “11019 Plat, cushion cut diamond 5.17 cts ‘F’ color VS1 clarity w/ 2 trapezoid diamonds 1.36 cts ring,” priced at $175,000 (pawned at Cash Depot on February 25, 2003 for $22,555). It provides in relevant part:
“Title remains in James Martin Jewels Ltd. and before any title can pass, or before any sale or agreement to sell can take place, the item or items selected by you must first be approved by James Martin Jewels Ltd. and a bill of sale rendered for such item or items. No right or power is conveyed to you to sell, pledge, hypothecate or otherwise dispose of this property regardless of any prior transactions, custom or usage in the trade.”
William Goldberg Diamond Corp. submits four memoranda, describing seven items of jewelry delivered to Khan between January 14, 2003 and February 20, 2003, four of which were returned by March 12, 2003. The back of each memorandum provides in relevant part:
“The merchandise described on the reverse side is received on memorandum only, at the undersigned consignee’s risk from all hazards, regardless of the cause of the loss or damage, only for examination and inspection by prospective purchasers, upon the express condition that all such merchandise shall remain the property of william goldberg diamond corp., and shall be returned on demand, in full, in its original form.”
*357 One memorandum describes item EO906, “1 oval hoop earring in platinum 28= 12.23 d-e if-vs (no certs.) nr 2,” priced at $45,000 and dated February 20, 2003. This item apparently was pawned at Cash Depot on February 14, 2003 under the description “miner vine earr.” The identification of William Goldberg’s oval hoop earring with Cash Depot’s “miner vine earr” was made by both owners’ private investigator Frank Senerchia (Senerchia affidavit at 11 [i]) and Donald Palmieri.
Petitioners submit a Piaget memorandum, dated February 6, 2003, which lists five items of jewelry, includes the words “Photo shoot” and has a return date of February 9, 2003. One of the items is marked “Ret’d 2/9.” The memorandum provides in relevant part:
“The merchandise described above is delivered to you for examination and inspection only and remains the property of Piaget and is to be returned upon demand in the original packaging and in the identical condition in which delivered to you. * * * A sale can be effected and title will pass only if and when Piaget agrees to such a sale and a bill of sale is rendered therefor.”
The list includes the following items: a Protocole watch, serial number 871183, valued at $110,000 (pawned at Cash Depot for $20,755 together with the “miner vine earr” on February 14, 2003), and a white gold Fleuris watch, serial number 894562, valued at $119,000 (pawned at Gem for $18,000 on February 20, 2003).
Graff submits a memorandum, dated February 24, 2003, executed by both Khan and Graff. The document lists six items of jewelry with item numbers, descriptions, diamond weights and prices. The memorandum states: “The above items are being loaned to you for photography on the understanding that they will be handled with every reasonable care and that they will at no time be left unattended. These items remain the property of Graff Diamonds (U.S.A.) Inc. and are returnable on demand.” Although the six items are referenced on “Advice Notes,” executed by Khan and Graff on January 28, 2003, February 13, 2003, February 21, 2003, and February 24, 2003, such notes contain only descriptions of the jewelry items. Moreover, Graff acknowledges that despite executing the memorandum on February 24, 2003, “[Khan] had already pawned some of these items, and immediately thereafter pawned the others” (Barguirdjian affidavit at [f 13).
The memorandum, which clearly states the items were delivered for the purpose of photography, lists two items that *358 were not pawned until February 27, 2003: (a) GN 3877, “Yellow Radiant and White Diamond Necklace,” priced at $551,000 (pawned at GMI for $165,260.92), and (b) USR 7898 “Yellow Radiant Diamond Ring w/ Kite Diamond Shoulders,” priced at $166,000 (pawned at GMI for $43,835).
Between February 14, 2003 and February 27, 2003, Khan pawned with petitioners nine of these items, for a total sum of $334,273.52. Khan was arrested on March 5, 2003 and charged with grand larceny in the first degree (Senerchia affidavit at n 2).[2] The pawned items of jewelry were seized from petitioners pursuant to a search warrant on March 13, 2003 (id. at ]j 7) and petitioners immediately commenced this proceeding.
II. Discussion
Petitioners allege that when the jewelry items were seized on March 13, 2003, Detective Robert G. Jennings of New York City Police Department’s Midtown North Detective Squad told petitioners’ counsel he intended to release the items to the owners without turning them over to the police property clerk to be inventoried in accordance with police procedures (38 RCNY 12-32). Because the items were seized from their possession, petitioners contend that by failing to provide them with vouchers and a district attorney’s release (38 RCNY 12-31, 12-32 [e] [iv]) the original respondents would have violated petitioners’ due process rights to enforce their property claims. Accordingly, petitioners allege that original respondents were proceeding in excess of jurisdiction and that the challenged determination was made in violation of lawful procedure, was effected by an error of law and was arbitrary, capricious and an abuse of discretion (CPLR 7803).
Neither the police nor the District Attorney, named as original respondents, have submitted papers opposing petitioners’ claims that they acted beyond their authority in seeking to return the jewelry items to the owners. The court notes, however, that at oral argument, counsel for respondent District Attorney agreed to have this court resolve the claims to the property, presumably pursuant to 38 RCNY 12-37 (b).
In particular, petitioners contend that they have a statutory lien against the items pledged by Khan under General Business Law § 44 (3), which must be satisfied before the jewelry is returned to its owners. General Business Law § 44 (3) provides:
“Notwithstanding any general, special or local law *359 or ordinance to the contrary, if a collateral loan broker in good faith and without knowledge extends credit on a loan, the collateral for which was entrusted to the pledgor on consignment or was entrusted by a merchant dealing in goods of the kind pledged to the pledgor who was a merchant dealing in goods of the kind pledged, the collateral loan broker shall be required to relinquish the collateral to the legal owner provided the amount of the loan and interest due is paid.”
Petitioners also contend that because the owners negligently entrusted Khan with valuable items of jewelry, they should suffer the loss as the parties who enabled Khan to subsequently defraud petitioners.
The owners claim that the police were authorized to return the jewelry to them under Penal Law § 450.10. However, that provision involves the rights of defendant and his counsel to written notice of requests for release of evidence alleged to have been stolen and not disputes between owners and third parties. Thus, Penal Law § 450.10 is not applicable here.
A. Temporary Preliminary Injunction
It is well settled that in order to be entitled to a temporary preliminary injunction petitioners must show a likelihood of success on the merits, danger of irreparable injury in the absence of an injunction, and a balance of the equities in their favor (see CPLR 6301; Aetna Ins. Co. v Capasso, 75 NY2d 860 [1990]; Preston Corp. v Fabrication Enters., 68 NY2d 397, 406 [1986]; Grant Co. v Srogi, 52 NY2d 496, 517 [1981]). The purpose of this provisional remedy is “not to determine the ultimate rights of the parties, but to maintain the status quo until there can be a full hearing on the merits” (Residential Bd. of Mgrs. of Columbia Condominium v Alden, 178 AD2d 121, 122 [1st Dept 1991] [citations omitted]; Jamie B. v Hernandez, 274 AD2d 335, 336 [1st Dept 2000]). Moreover, the decision is committed to the sound discretion of the trial court (see Doe v Axelrod, 73 NY2d 748, 750 [1988]; Jiggetts v Perales, 202 AD2d 341, 342 [1st Dept 1994]).
(i) Likelihood of success
In that petitioners’ article 78 claims against the police and the District Attorney are unopposed, the procedures which they failed to follow are clearly required (38 RCNY 12-37, 12-31) and Penal Law § 450.10 is inapplicable, petitioners show a likelihood of success on the merits as to this claim.
Research has found no cases interpreting General Business Law § 44 (3). Accordingly, in matters involving statutory *360 construction, the court must examine the statute’s plain meaning (Bluebird Partners v First Fid. Bank, 97 NY2d 456, 460-461 [2002]). By its terms, General Business Law § 44 (3) applies to two types of pledgors, and by using the words “was entrusted to the pledgor on consignment” and “was a merchant dealing in goods of the kind pledged,” the Legislature focused on the actual status of the pledgor (Albano v Kirby, 36 NY2d 526, 529-530 [1975]). Thus, to invoke the benefits of this statute, petitioners first must demonstrate either that Khan was a jewelry merchant or that the subject items were consigned to Khan. Thereafter, they must show that they acted in good faith and without knowledge.
Petitioners Gem and Cash Depot submit affidavits that only report statements made by Khan to them that he was “a jewelry dealer” (Popilevsky affidavit at 7; Charlene Khan affidavit at 6). Petitioner GMI submits an affidavit reporting statements made by Khan to an employee of the affirmant that he was “a dealer in precious stones” (Modell affidavit at 7). These statements, standing alone, are hearsay and double hearsay and are insufficient to demonstrate the probability of establishing that Khan was a jewelry merchant.
As to consignment, under the Uniform Commercial Code it is defined as “a transaction, regardless of its form, in which a person delivers goods to a merchant for the purpose of sale” (UCC 9-102 [a] [20]). The Appellate Division, First Department, has further explained that a consignment provides the consignee with goods and with an option to take title upon the occurrence of certain conditions (see Rahanian v Ahdout, 258 AD2d 156, 158-159 [1st Dept 1999]).
Examining the documents executed by Khan and/or the owners when Khan was given the jewelry items, the court finds that petitioners make a prima facie showing of consignment, consistent with the foregoing definitions, to Khan only by James Martin Jewels Ltd. of the $175,000 diamond ring that Khan pawned at Cash Depot.
Having made a prima facie showing that this item was entrusted to Khan on consignment, petitioner Cash Depot now must show that it acted “in good faith and without knowledge” that Khan did not have legal ownership of the jewelry item when it extended credit on loan to Khan. Petitioners, including Cash Depot, argue that their prior dealings, in which Khan redeemed all jewelry items pledged, and Internet searches on the part of petitioner GMI, suggested that Khan had legal possession of the items. The owners contend that because these *361 jewelry items were unique, identifiable and unusually valuable, petitioners were obliged to do more than rely on Khan’s word that he owned such items. The owners further claim that petitioners failed to conduct a reasonable inquiry into whether Khan had title to the item as required under Penal Law § 165.55 (2), which provides: “A collateral loan broker * * * presumed to know that such property was stolen if he obtained it without having ascertained by reasonable inquiry that the person from whom he obtained it had a legal right to possess it.” Because petitioners have not been charged with violating Penal Law § 165.55 (2), the reasonable inquiry standard is not applicable to this proceeding.
Petitioners further argue that they acted in good faith by complying with the mandates of General Business Law § 44 (1). Since legislation should be interpreted so as to render all provisions meaningful (see Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577 [1998]), “good faith and without knowledge” in General Business Law § 44 (3) necessarily must mean more than complying with the mandates of an earlier provision. In any event, General Business Law § 44 (1) requires pawnbrokers at the time of each loan to deliver to the pledgor a note or memorandum signed by him, describing the items pledged, whether he is the owner, consignee or agent of the owner and the amount loaned and rate of interest. The pawn ticket submitted by Cash Depot does not contain Khan’s written representation that “I am the [ ] Owner [ ] Consignee or [ ] Agent of the owner of the above-mentioned pledge * * in that Khan failed to check one of the three boxes. Because Cash Depot acknowledges that it is legally required to obtain such written representation (Cohen affidavit at 8), this petitioner’s acceptance of such pawn ticket and subsequent act of extending credit on a loan to Khan is insufficient to demonstrate probability of success on the issue of good faith under General Business Law § 44 (3). Accordingly, the jewelry items pledged by Khan to Cash Depot on such pawn tickets — the James Martin Jewels Ltd. “11019 Plat, cushion cut diamond 5.17 cts ‘F’ color VS1 clarity w/ 2 trapezoid diamonds 1.36 cts ring,” the Piaget Protocole watch, and “old miner vine earr,” discussed below, do not warrant protection under this provision. The issue of the remaining petitioners’ good faith as to the other items will be determined at a hearing.
The two Graff items pawned by Khan on February 25, 2003 clearly were not entrusted to Khan on consignment under the memorandum submitted in that the memorandum states that *362 the items were being loaned to Khan for photography. Thus, petitioners fail to make a showing of probability of success under General Business Law § 44 (3) as to Graff. The third Graff item, a “White Round Diamond Ring w/ Baguette Shoulders,” priced at $117,000, was pawned at Gem on February 24, 2003 and the court is unable to determine whether this occurred before or after the memorandum was executed. Therefore, a hearing will be held as to the nature of the transaction with regard to this item.
The following issues of fact exist with regard to the William Goldberg Diamond Corp. jewelry items: (i) Cash Depot’s pawn ticket for “miner vine earr” is dated February 14, 2003, six days prior to the date of the memorandum, and (ii) the memorandum refers to one platinum hoop earring and apparently a pair of diamond platinum hoop earrings were seized (Palmieri affidavit at 25).[3] Consequently, the court requires further clarification on the specific item or items delivered to and pawned by Khan at Cash Depot in order to make a determination and a hearing will be held on this issue.
There are also issues of fact as to whether Piaget entrusted Khan with items of jewelry on consignment. Since the Fleuris watch was entrusted to Khan for an alleged “photo shoot” on a memorandum that provides for a sale, petitioner Gem may have a claim under General Business Law § 44 (3) and a hearing will be held on this issue.
Petitioners also argue that they have an alternative, equitable lien interest superior to the rights of any party until the lien is satisfied. However, the legislative history of General Business Law § 44 (3) reveals that this provision was enacted and amended for the purpose of protecting pawnbrokers, like bona fide purchasers, from “faithless agents” who are either merchants dealing in the kind of article pledged or those entrusted with such articles for consignment (see Senate Introducer Mem in Support, Bill Jacket, L 1986, ch 867). Moreover, petitioners make no showing that following the amendment of General Business Law § 44 (3) equitable relief is also available to them. Accordingly, petitioners are limited to the statutory relief under General Business Law § 44 (3).
(ii) Irreparable Injury
Petitioners argue that their sole means of recovery is *363 premised on a possessory lien, since they were holding the jewelry items as collateral. Thus, absent injunctive relief, if the jewelry items are returned to the owners, any final judgment would be rendered ineffectual (see Gramercy Co. v Benenson, 223 AD2d 497, 498 [1st Dept 1996]; Sau Thi Ma v Xuan T. Lien, 198 AD2d 186 [1st Dept 1993], lv dismissed 83 NY2d 847 [1994]; Republic of Lebanon v Sotheby’s, 167 AD2d 142 [1990]; Robjudi Corp. v Quality Controlled Prods., 111 AD2d 156 [2d Dept 1985]). Although the owners argue that petitioners’ relief can be compensated in money damages (Credit Index v Risk-Wise Intl., 282 AD2d 246, 247 [1st Dept 2001]), absent the collateral, the court sees no basis for their collecting such damages independent of possession under General Business Law § 44 (3). Therefore, petitioners sufficiently establish the element of irreparable injury.
(iii) Balancing of the Equities
In balancing the equities, the court must weigh the harm each side would suffer in the absence or face of injunctive relief (id.; Laro Maintenance Corp. v Culkin, 255 AD2d 560 [2d Dept 1998]). Petitioners argue that the equities tip in their favor since, absent injunctive relief, they would lose the ability to recover their losses under the possessory lien. Petitioners cite Uniform Commercial Code § 9-313 (d), which provides in relevant part: “If perfection of a security interest depends upon possession of the collateral by a secured party, perfection occurs no earlier than the time the secured party takes possession and continues only while the secured party retains possession.”
The owners argue that if such provisional relief is granted, any damage will result in depreciation. Graff argues it will be subject to tariffs for not returning certain items to the United Kingdom by a date certain. However, the jewelry items are secure in a vault, pursuant to the parties’ stipulation, and no documentary support for the tariff claim is provided. Consequently, a balancing of the equities favors petitioners.
Finally, in granting the temporary injunction, the court must fix the amount of an undertaking to compensate the owners for damages in the event of a final determination that petitioners were not entitled to injunctive relief (CPLR 6312 [b]; Schwartz v Gruber, 261 AD2d 526, 527 [1999]; Blueberries Gourmet v Aris Realty Corp., 255 AD2d 348, 350 [1998]). The amount of the undertaking is a matter within the court’s sound discretion {id.). The owners seek a bond in a sum equal to the value of *364 the retained jewelry items; petitioners solely request that the court fix the bond in a minimal sum. Since the value of the jewelry items being enjoined for hearings is $446,000, the court determines that petitioners shall post a bond in the sum of $150,000 within seven days of service of a copy of this order with notice of entry.
Accordingly, it is ordered that petitioners’ motion for a temporary preliminary injunction is granted to the extent of retaining in the custody of Donald A. Palmieri, on behalf of the New York City Police Department Property Clerk, pending a hearing, the James Martin Jewels Ltd. “11019 Plat. Cushion cut diamond 5.17 cts ‘F’ color VS1 clarity w/ 2 trapezoid diamonds 1.36 cts ring”; the William Goldberg Diamond Corp. “1 Oval Hoop Earring in Platinum 28= 12.23 D-E IF-VS (No Certs.) NR 2”; the Piaget white gold Fleuris watch, serial number 894562; and the Graft Diamonds (USA) Ltd. “USR 9775 White Round Diamond Ring w/ Baguette Shoulders”; and is otherwise denied; and it is further ordered that respondent owners’ cross motions are granted to the extent of directing that Donald A. Palmieri, on behalf of the New York City Police Department Property Clerk, return to Graff within seven days of service of a copy of this order with notice of entry the Graff GN 3877 ‘Yellow Radiant and White Diamond Necklace” and the Graff USR 7898 ‘Yellow Radiant Diamond Ring w/ Kite Diamond Shoulders” and to Piaget the Protocole watch, serial number 871183 and is otherwise denied; and it is further ordered that petitioners shall post a bond in the sum of $150,000, $60,000 by Gerald Modell Inc., $60,000 by Gem Financial Services, Inc. and $30,000 by Cash Depot, Inc., within seven days of service of a copy of this order with notice of entry.[4]

. Piranesi settled its claims with petitioner Gem pursuant to a “so ordered” stipulation dated April 25, 2003. Bulgari settled its claims with petitioner Modell pursuant to a “so ordered” stipulation dated May 5, 2003. Accordingly, Piranesi and Bulgari are no longer respondents in this proceeding.

. At oral argument, this court was informed by counsel for respondent District Attorney that Khan had been indicted.

. Petitioners seek appointment of a new agent for the property clerk on the grounds that Palmieri is not impartial, since he submitted an affidavit on the owners’ behalf. Although an escrow agent should be impartial (Schuman v Conforti, 26 NY2d 755 [1970]), the court perceives no risk of Palmieri prematurely releasing jewelry items (see id.).

. On June 16, 2003, the court issued an amended decision and order solely to direct that the James Martin ring be returned and, on that basis, that the bond be reduced to $80,000.