OPINION OF THE COURT
Robert A. Bruno, J.
On January 25, 2010, plaintiff submitted a postjudgment order to show cause, directing that the defendant produce certain documents and records with respect to the pending sale of commercial property known as 750-790 Park Place, Long Beach, *528 New York (property). Counsel for plaintiff, Mr. Mitchell, states in his affirmation that since the property is scheduled to be sold on February 22, 2010, this court must entertain this application prior to the sale date because “it is difficult, if not impossible, to understand the arm’s length financial benefit to selling the building.”[1]
On February 3, 2010, plaintiff submitted a second postjudgment order to show cause (emergency OSC), along with an emergency affirmation, from plaintiffs counsel, Mr. Mitchell, alleging virtually the same set of facts contained in his prior order to show cause, but this time requesting a temporary restraining order and a preliminary injunction enjoining the sale of the property. This court heard oral argument on the same day and at the conclusion of oral argument denied plaintiffs temporary restraining order for the reasons set forth herein. Plaintiff thereafter requested an opportunity to submit additional briefs regarding the preliminary injunction on the return date of plaintiffs original order to show cause for February 16, 2010 which this court granted. On February 16, 2010, the court heard oral argument regarding plaintiffs application for a preliminary injunction. During oral argument, counsel for plaintiff decided not to submit any additional briefs, withdrew their application for a preliminary injunction and made a new oral application to this court, to restrain the defendant’s assumed proceeds of sale from the property to securitize the plaintiffs unperfected security interest in the defendant’s unsecured potential share of the rental income from the property that will no longer exist after the sale. Counsel for plaintiff acknowledged that he informed counsel for defendant of this new argument on Saturday, February 13, 2010, although no additional papers were submitted. At the conclusion of oral argument, counsel for defendant requested until February 18, 2010 to submit opposition papers in response to plaintiffs new oral argument and counsel for plaintiff also requested to submit their reply, if any, on the same day. The court agreed and advised it would deem the balance of the motion submitted on February 18, 2010. On February 18, 2010, at approximately 4:00 p.m., this court received the defendant’s opposition papers and a memorandum of law from plaintiff. For the reasons set forth herein this court denied plaintiffs oral application to restrain the defendant’s assumed share of the proceeds from the sale of the property as well as its request for attorney fees.
*529 Facts
According to plaintiffs emergency OSC, the plaintiff wife and defendant husband entered into a stipulation on or about March 29, 2009 (stipulation).[2] The stipulation provides, in relevant part, at article XVII (2), as follows:
“2. The Husband shall pay to the Wife the non-taxable sum of Two Million Two Hundred Thousand ($2,200,000.00) Dollars, which sum shall be payable in equal monthly installments in the amount of Sixty-One Thousand One Hundred Eleven and 11/ 100) ($61,111.11) Dollars, and which payments shall commence on the fifteenth (15th) day of the month following the execution of this Stipulation and continuing on the fifteenth (15th) day of each month thereafter for a period of thirty-six (36) months until satisfied, which sum shall be directly deposited to the bank account of the Wife and she shall provide all necessary information to the Husband to effectuate same. The Husband’s obligation to pay the Two Million Two Hundred Thousand ($2,200,000.00) Dollars shall be secured as follows:
“a) by his rental income paid to 750 Park Place, LLC (i.e., the Husband’s share of the monthly rental income) which payment shall be paid directly to the Wife by direct deposit to the bank account of Wife;
“b) in the event of default in the payment of any of the monthly installments when due as herein provided, and in the event that the Husband fails to cure said default within 30 days of written notice (sent by certified mail to the Husband’s Merrick address or any other address he so designated and by e-mail) by the Wife to the Husband, the Wife may declare the entire balance of Two Million Two Hundred Thousand ($2,200,000.00) Dollar distributive award then unpaid immediately due and payable and she shall be entitled to enter a money judgment in favor against the Husband upon notice to the Husband.”
The parties acknowledge that the property is owned by 750 Park Place Realty Co., LLC (LLC), an entity that is not a party *530 to this action or stipulation. It is also undisputed that the plaintiff and defendant each own a 35% interest in the LLC. The parties further acknowledge that the property and the defendant’s 35% ownership interest in the LLC are not marital property, but separate property.
Arguments
Collateral for Distributive Award First, plaintiff claims that since the collateral for the payment of a $2,200,000 distributive award is secured by the defendant’s share of the rental income generated by the property, if the property is sold, plaintiff will be denied her collateral[3] and she will no longer receive her payments.
Security Interest in Rents
Second, plaintiff claims she has a security interest in the defendant’s collateral, in that the defendant pledged his share of rental income from the property as security for his distributive award payment to plaintiff.
Market Value and Arm’s Length Transaction Third, plaintiff claims that the LLC is selling the property below market value and the sale is not an arm’s length transaction because the LLC is selling the property to an individual known as Avery Eisenreich and a recent Google Internet search had revealed that Mr. Eisenreich is an officer of 13 nursing homes and the defendant’s business, Chem RX, provides pharmaceuticals to nursing homes.
Uniform Commercial Code § 9-315 Finally, on February 13, 2010, the plaintiff, without submitting any additional papers, argued that the sale of the property by the LLC represents the proceeds of sale of plaintiffs collateral, namely, the defendant’s future interests, if any, in a portion of the rent received from the LLC.
Conclusions of Law Temporary Restraining Order
It is well settled that in order for the court to grant a temporary restraining order and preliminary injunction, pursu *531 ant to CPLR 6301 the movant must show (1) she was likely to succeed on the merits, (2) she would suffer irreparable harm absent interim injunctive relief, and (3) the balance of the equities were in her favor.
Generally, an injunction in a breach of contract action to recover money only is improper. In Credit Agricole Indosuez v Rossiyskiy Kredit Bank (94 NY2d 541 [2000]), the Court of Appeals held that preliminary injunctive relief was improper. Under the substantive law, an unsecured general creditor has no cognizable interest in the debtor’s property until the creditor obtains a judgment. Such creditor, therefore, has no right to any equitable prejudgment remedy that will interfere with the debtor’s use of his or her property. This is so even when there is a threat of dissipation of the debtor’s assets, rendering the anticipated money judgment uncollectible. (Alexander, 2000 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C6301:l.)
However, plaintiff argues that, since the instant action is commenced pursuant to Domestic Relations Law § 234, the plaintiff need only show that the defendant is attempting or threatening to dispose of marital assets so as to adversely affect the movant’s ultimate rights to equitable distribution. In Loderhose v Loderhose (216 AD2d 275, 276 [2d Dept 1995]) the Court held,
“Domestic Relations Law § 234 authorizes a court to issue pendente lite injunctive relief in a marital action without requiring the movant to make the requisite showing normally required by CPLR article 63: irreparable harm and a likelihood of success on the merits (see, Taft v Taft, 156 AD2d 444; Leibowits v Leibowits, 93 AD2d 535). However, a prerequisite to the issuance of such an order is a showing by the movant that the party to be restrained is ‘ “attempting or threatening to dispose of marital assets so as to adversely affect the movant’s ultimate rights in equitable distribution” ’ (Sacks v Sacks, 181 AD2d 727, 728; see also, Cohen v Cohen, 142 AD2d 543; Taft v Taft, supra).”
While there is authority that requires a movant in a matrimonial action seeking to restrain a third party from transferring assets (see Kaplan v Kaplan, 94 AD2d 788 [2d Dept 1983]) to comply with the stricter requirements of CPLR 6301 et seq., under the facts of this case, the court finds that under either CPLR 6301 or Domestic Relations Law § 234 the plaintiff has *532 failed to demonstrate she is entitled to a temporary restraining order or preliminary injunction.
Domestic Relations Law § 234 provides, in relevant part,
“In any action for divorce, for a separation, for an annulment or to declare the nullity of a void marriage, the court may (1) determine any question as to the title to property arising between the parties, and (2) make such direction, between the parties, concerning the possession of property, as in the court’s discretion justice requires having regard to the circumstances of the case and of the respective parties.” (Emphasis added.)
Plaintiff’s reliance on Domestic Relations Law § 234 is misplaced in that plaintiff seeks to enjoin the sale of property that is owned by a third party and as a result there is no question as to “title to property arising between the parties.” In addition to the foregoing, although plaintiff claims this is an action “between the parties,” plaintiff seeks to enjoin a nonparty not before this court. (See Petrie v Petrie, 126 AD2d 951 [4th Dept 1987].) While the court is aware that, in some cases, where a third party is a captive entity of one of the parties the circumstances may be different. However, in the instant action, both parties own the same percent of the LLC and no credible evidence has been provided to indicate otherwise.
In addition to the foregoing, if the property sought to be enjoined is separate property, as the case herein, a temporary restraining order would be inappropriate unless the plaintiff can show some right in the property, which she cannot. (See Guttman v Guttman, 129 AD2d 537 [1st Dept 1987]; Steinberg v Steinberg, 87 AD2d 782 [1st Dept 1982].) Such restraints, however, do not apply to separate property. (Nebot v Nebot, 139 AD2d 635 [2d Dept 1988]; Hertzler v Hertzler, 109 Misc 2d 16 [Sup Ct, Suffolk County 1981].)
Collateral for Distribution Award
Plaintiffs first argument that the defendant’s share of the rental income will no longer be available to pay plaintiff the distributive share may be true, but plaintiff fails to offer any credible evidence that because the rental stream may no longer exist, that the defendant will default on his obligations to pay pursuant to the stipulation. Clearly, pursuant to the stipulation, the defendant’s obligation to make his monthly payments to plaintiff do not abate if the tenant of the property was in default, was evicted or went bankrupt. Plaintiff also fails to establish *533 that the prior monthly payments she received from defendant came from the alleged collateral or that the LLC made a distribution of its assets to its members, in order for the defendant to make his monthly payments.
In addition to the foregoing, it appears that plaintiff is owed a balance of approximately $1,588,888.90. Plaintiff concedes that the property is being sold for $6,000,000 (Mitchell affirmation para 17) and there currently is a mortgage in the amount of $2,639,382 (Mitchell affirmation para 18). Therefore, it would appear the equity in the property is approximately $3,360,618 and defendant’s 35% interest would be sufficient to meet the monthly payments for the next 19 monthly payments. Plaintiff also acknowledged during oral argument on February 3, 2010 that defendant’s payments, pursuant to the stipulation, were current.
In reading the entire 65-page stipulation, the court notes that the defendant received the St. Andrews residence without any mortgage with a fair market value of $3,500,000 and a residence in Boca Raton, Florida valued at approximately $5,000,000. Similarly, it appears the plaintiff also received several millions of dollars.[4] Suffice it to say, both the plaintiff and the defendant are worth millions of dollars and the plaintiff has simply not demonstrated by any credible evidence that the defendant is disposing any marital assets. More to the point, the assets are admittedly separate property and the plaintiff simply has not demonstrated defendant’s inability or refusal to comply with the stipulation and continue to pay the plaintiff or that the defendant has taken any action or threatened to take any action to render a money judgment uncollectible.
Security Interest in Rents
Turning next to plaintiff’s argument that she has a security interest in defendant’s share of the rents from the property, plaintiff produced no written assignment of lease and no irrevokable notice to the tenant that certain rents were assigned to plaintiff. There was no assignment of defendant’s 35% interest in the LLC and no restriction on the defendant voting his interest in the LLC to sell the property. It appears the plaintiff did not intend to perfect her security interest in the defendant’s share of the rental income and was content in remaining an unsecured creditor.
*534 In addition to the foregoing, it seems clear to the court that the parties to the stipulation contemplated the plaintiff being an unsecured creditor regarding the balance of her $2,200,000 distributive share. The stipulation expressly provides at article XVII (2) (b) that in the event of a default of the $2,200,000 distributive award, the plaintiff shall be entitled to a money judgment in her favor and against the defendant. Here, the parties, both represented by prominent law firms, clearly contemplated plaintiff being an unsecured creditor and the defendant’s possible default with all the associated risks therein and also provided that the remedy for a default would be a money judgment. In light of the foregoing, it would be improper for this court to rewrite the stipulation that clearly expresses the parties’ intentions. {See Hendrix v Hendrix, 2 AD3d 1257 [2003]; Brennan v Brennan, 300 AD2d 524, 525 [2002].) In ascertaining the intent of the parties, the entire document is examined and if its language is clear and unambiguous, the court’s inquiry is ended. In response to this court’s question to counsel for plaintiff regarding why plaintiff never considered a $2,200,000 mortgage on the defendant’s $3,500,000 or $5,000,000 residences, counsel for plaintiff acknowledge they tried to negotiate this in the stipulation, but defendant refused. Clearly, this demonstrates the defendant’s intention of not collateralizing his assets to secure plaintiffs distributive award.
Market Value and Arm’s Length Transaction
Turning to plaintiffs argument that the purchaser of the property, Mr. Eisenreich, owns nursing homes and the defendant, who provides pharmaceuticals, may do business with him is pure speculation.[5] Finally, whether the nonmarital property is being sold below fair market value is simply of no moment to the court. This court will not permit the plaintiff, who appears to be a disgruntled member of a limited liability company, owning a 35% membership interest, to use Domestic Relations Law § 234 as a vehicle to litigate the business decision of the LLC that she disagrees with regarding the sales price of the property. The court finds it troubling that the plaintiff acknowledges the LLC will incur a break-up fee of $1,500,000 if title is not delivered by February 22, 2010, but offers no remedy to the LLC if this court grants the temporary restraining order and the LLC incurred a $1,500,000 break-up fee. This scenario seems inconsistent with plaintiffs concern that the LLC is selling the *535 property below fair market value and is comfortable with the LLC incurring a $1,500,000 break-up fee. If in fact plaintiffs allegations are true, the more appropriate remedy may lie in the Limited Liability Company Law, but a temporary restraining order against a third party, not before this court, disposing of non-marital property will not issue.
Uniform Commercial Code § 9-315
Section 9-315 (a) (2) of the Uniform Commercial Code provides that a security interest attaches to any identifiable proceeds of the collateral.
In the instant case, the alleged collateral is the defendant’s purported share of his rental income from a tenant that leases space from the LLC of which he has a 35% interest.
However, it is undisputed that the so-called collateral (defendant’s share of rental income) is not what is being sold. What is being sold, as admitted by all counsel, is the property owned by the LLC and not the defendant’s interest in the potential rent that may or may not exist in the future.
Similarly, the proceeds of sale of the property belong to the LLC and it appears counsel for plaintiff assumes that automatically means the defendant will receive his 35% share of the net proceeds of sale. However, plaintiff never addresses what, if any, debts or creditors are entitled to be paid before the LLC makes any purported distribution to its members,[6] or if the LLC will reinvest these net proceeds in another business venture or if the LLC has already entered into its own perfected security agreement with third-party creditors regarding the net proceeds *536 from sale of the property. Finally, plaintiff does not cite any case law regarding its argument pursuant to the Uniform Commercial Code.
Simply stated, the sale of the property does not represent the identifiable proceeds of the alleged collateral, namely, defendant’s share of the tenant’s rent paid to the LLC. More to the point, when the LLC sells the property it no longer retains an interest in same, as an owner and landlord, and therefore future rent payments are extinguished by operation of law, again leading to the conclusion that these simply cannot be identifiable proceeds from the sale of collateral (defendant’s share of rental income) when the collateral does not exist because it is extinguished by operation of law.
In addition to the foregoing, there is no evidence that defendant ever received a portion of the rent generated by the LLC or if there was or ever will be a distribution to the defendant or its members of any assets of the LLC.
Accordingly, plaintiffs application for a temporary restraining order and preliminary injunction is denied. Similarly, plaintiffs oral application for a restraint on defendant’s proceeds, from the sale of the property, if any, and for attorney fees regarding the emergency OSC is denied.
All matters not decided herein are denied.

. This order to show cause was resolved by stipulation on February 16, 2010, except for legal fees, which will be determined by a separate decision.

. At page 64, the stipulation provides, “In Witness Whereof, the parties have caused these presents to be signed as of the date and year first above written.” Since there was no date provided in the stipulation, this court has used the date the parties’ signatures were notarized, which were both March 26, 2009.

. During oral argument on February 3, 2010, counsel for plaintiff acknowledged that all monthly payments to plaintiff pursuant to the stipulation were current. Therefore, based upon counsel’s concession, this court has calculated the balance due plaintiff pursuant to article XVII (2) of the stipulation, to be approximately $1,588,888.90.

. According to defendant, the plaintiff received over $21,000,000 (defendant’s affirmation in opposition at 2).

. The allegations are contained in counsel’s affirmation and not based on personal knowledge. Plaintiff did not submit an affidavit.

. “[Limited Liability Company Law] § 704. Distribution of assets
“Upon the winding up of a limited liability company, the assets shall be distributed as follows:
“(a) to creditors, including members who are creditors, to the extent permitted by law, in satisfaction of liabilities of the limited liability company, whether by payment or by establishment of adequate reserves, other than liabilities for distribution to members and former members under section five hundred seven or section five hundred nine of this chapter;
“(b) except as provided in the operating agreement, to members and former members in satisfaction of liabilities for distributions under section five hundred seven or section five hundred nine of this chapter; and
“(c) except as provided in the operating agreement, to members first for the return of their contributions, to the extent not previously returned, and second respecting their membership interests, in the proportions in which the members share in distributions in accordance with section five hundred four of this chapter.”