**Soon Y. PARK, Plaintiff,**

v.

**HOWARD UNIVERSITY, Defendant.**

**Civ. A. No. 92–2662–OG.**

United States District Court,
District of Columbia.

Sept. 23, 1994.

St. John Barrett, Washington, DC, for plaintiff.

Susan L. Riley, Sr. Associate Gen. Counsel, Howard University, William P. Flanagan, Janet Holt, Hogan & Hartson, Washington, DC, for defendant.

### MEMORANDUM

GASCH, District Judge.

I.  *Procedural History*

The Court's findings of fact and conclusions of law were announced in a Memorandum–Opinion ("Opinion") issued on April 8, 1994.  The Court found for the plaintiff in the amount of $1,875 for lost wages, $6,965 in medical expenses and the Court further held that the evidence established a basis for a

substantial damage award.  Opinion at 22. This memorandum supplements the Court's Opinion filed on April 8th.

II.  *Discussion*

In the Court's Opinion finding for the plaintiff, the Court afforded the parties the opportunity to meet and agree, if possible, on an appropriate award.  This had been done successfully in an earlier case also involving this defendant.  *Ware v. Howard University,* 816 F.Supp. 737 (D.D.C.1993).  However, the Court was advised that, although the parties had met, they were unable to agree.  In the memorandum filed by the defendant, reliance was placed on *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), decided approximately three weeks after the Court's opinion was filed.  Accordingly, the Court set the matter for hearing in open court affording the parties the opportunity to state their respective positions concerning the applicability of the *Landgraf* case.

On November 21, 1991, President Bush signed into law the Civil Rights Law of 1991. The Civil Rights Law of 1991, an amendment to Title VII of the Civil Rights Act of 1964, provides for compensatory and punitive damages for certain violations of Title VII.  *Id.* at ——, 114 S.Ct. at 1488.  The 1991 Act, also, provides the right to trial by jury if damages are sought.  42 U.S.C. §§ 1981a(c).[1] Prior to the 1991 amendment, only equitable relief was provided for by Title VII.  *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1490.

At the hearing on June 22, 1994, the defendant took the position that the *Landgraf* case would permit only a *de minimis* award to the plaintiff.  The defendant takes the position further that the only conduct that would subject the defendant to compensatory damages is conduct occurring subsequent to the 1991 amendments to the Civil Rights Act.

■  The plaintiff, on the other hand, takes the position that Howard's conduct, in violation of the Civil Rights Act prior and subse-

---

**1.**  42 U.S.C. §§ 1981a(c) as amended by § 102 of the 1991 Civil Rights Act.  The Supreme Court, in *Landgraf,* refers to the damage and jury trial provisions as §§ 102(a) and (c).  *Landgraf,* ——

U.S. at —— n. 1, 113 S.Ct. at 1488 n. 1 (1994). This Court will adopt this method to refer to the relevant sections.

quent to the 1991 amendments can be considered by the Court in awarding compensatory damages. Plaintiff emphasizes that defendant's conduct was continuing in nature and was not discontinued by the defendant as a result of the 1991 amendments, and the Court finds that this is a distinguishing factor insofar as *Landgraf* is concerned. The Court notes that the bench trial and all the conduct of which Landgraf complained happened prior to the 1991 amendments and further, that Landgraf's employer took action promptly to transfer the employee of whose conduct Landgraf complained. No remedial action has been taken by the defendant in this case. In fact, the discriminatory conduct continues unabated. The bench trial took place approximately a year after the 1991 amendments. Prior conduct can be considered, for this plaintiff relies upon *Bradley v. Richmond School Board*, 416 U.S. 696, 721, 94 S.Ct. 2006, 2021, 40 L.Ed.2d 476 (1974) in which the Supreme Court permitted an award of attorneys' fees covering services rendered prior to the passage of the statute authorizing award of attorneys' fees for services rendered prior to the statutory authorization. In discussing the *Bradley* case in *Landgraf*, the Supreme Court referred, in footnote 32, to the case of *Harper v. Virginia Department of Taxation*, — U.S. —, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). The Court's comment in making this reference is significant. "While it was accurate in 1974 to say that a new rule announced in a judicial decision was only *presumptively* applicable to pending cases, we have since established a firm rule of retroactivity." *Landgraf*, — U.S. — n. 32, 114 S.Ct. 1504 n. 32. (Citing *Harper* and *Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). Involved in the *Harper* case was a prior decision of the Supreme Court in *Davis v. Michigan Department of the Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), in which the Supreme Court held that a state violates the constitutional doctrine of intergovernmental tax immunity when taxing retirement benefits paid by the federal government but exempts from taxation all retirement benefits paid by the state or its political subdivision. The Virginia courts had refused to apply the *Davis* case to *Harper*.

The Supreme Court reversed the Virginia decision and held "that this Court's application of a rule of federal law to the parties before the Court requires every court to give retroactive effect to that decision." *Harper*, — U.S. at —, 113 S.Ct. at 2513.

▪ Law existing at the time these actions took place was the law embodying the Civil Rights Act, which prohibited discrimination against an employee because of that employee's national origin and gender. It is true that, until the 1991 amendments, compensatory damages could not be assessed but the law binding on this Court is the law which exists at the time of this Court's decision and that is the law which permits the assessment of compensatory damages for conduct in violation of the Civil Rights Act, whether the acts occurred prior to the 1991 amendments or subsequent thereto and, as the *Bradley* case and the *Harper* case point out, the Supreme Court has established a firm rule of retroactivity.

In *Landgraf*, the Supreme Court does discuss circumstances as a result of which it would be unfair to apply the new rule retroactively. The thrust of this exception is whether the defendant had a right to rely upon its conduct. The Court finds that there was no basis for any reliance by the defendant that it could violate with impunity the civil rights of the plaintiff or continue to do so. Plaintiff is entitled to be made whole.

The Supreme Court further clarified its position respecting the award of compensatory damages, as follows: "The provision of § 102(a)(1) authorizing the recovery of compensatory damages is not easily classified. It does not make unlawful conduct that was lawful when it occurred; as we have noted, *supra*, at 1490–1491, § 102 only reaches discriminatory conduct already prohibited by Title VII." *Landgraf*, — U.S. at —, 114 S.Ct. at 1506. The majority opinion notes: "At least with respect to its compensatory damages provisions, then, § 102 is not in a category in which objections to retroactive application on grounds of fairness have their greatest force." *Id.* The injuries Dr. Park suffered before and after the adoption of § 102 (a)(1) were illegal; only the question of making the plaintiff whole remains. In its

opinion, this Court found that the hostile work environment would recede only with the outcome of this suit. Opinion at 13. Because the plaintiff was not constructively discharged, the § 102(a) remedies are needed to address what Congress found lacking in the pre-act remedies.

In a case alleging a hostile work environment, often individual incidents taken in isolation do rise to a violation of Title VII. It is when the evidence of the whole pattern of behavior is heard, in concert, that the discriminatory violation is apparent. After weighing the policy arguments cited by the Supreme Court in *Landgraf*, this Court concludes that when a district court is confronted with a case where discriminatory conduct occurred before and after the enactment of § 102, the Court can fashion a remedy utilizing the § 102(a) provisions to compensate the plaintiff for her injury.

III. *Damages*

Title VII makes it illegal to discriminate against an employee on the basis of sex or nation of origin.[2] Title VII prohibits an employer from creating or condoning a hostile work environment that is a result of harassment or disparate treatment. See *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The Court found, in its memorandum-opinion, that the plaintiff was singled out because of her nation of origin and subjected to harassment which may be attributed, both directly and indirectly, to her supervisors and the defendant.

The Supreme Court has said that "the language of Title VII is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." *Meritor*, 477 U.S. at 64, 106 S.Ct. at 2404. In *Meritor*, the Supreme Court said: "[T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their race, gender, religion, or national origin offends Title VII's broad rule of work place equality." *Harris v. Forklift Systems, Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993).

The conditions and privileges of plaintiff's employment at Howard have been affected seriously by continuous discriminatory conduct. The discriminatory conduct was a serious blow to the professional prestige and career goals of the plaintiff. Dr. Park was stripped of every professional position and privilege she had earned as a faculty member at Howard. The actions, noted in the Court's opinion, clearly demonstrated that the conduct of Dr. Park's supervisors was sufficiently pervasive to amount to harassment which created a hostile work environment.[3] For the reasons stated in this memorandum and the memorandum-opinion of April 8, 1994, the Court finds that an appropriate award for compensatory damages is $150,000.

Both parties, through counsel, agree that the Court's earlier award of $1,875 in back pay is barred by the statute of limitations. 42 U.S.C. § 2000e–5(g). Tr. at 6. Defendant Howard University's Memorandum Concerning Damages at 5–6. The incident in

---

**2.** Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer—to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or nation of origin." 42 U.S.C. § 2000e–2(a)(1).

**3.** Plaintiffs charging a continuing violation must show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitation] period." *Valentino v. United States Postal Serv.*, 674 F.2d 56, 65

(D.C.Cir.1982) (quoting B. Schlei & P. Grossman, *Employment Discrimination Law* 232 (Supp.1979)). This Court found the harassment that created a hostile work environment for plaintiff was continuous and still on-going. The last discriminatory incident, plaintiff's removal as coordinator of the clerkship program, occurred in the summer of 1992 when plaintiff was notified. Dr. Park's demotion was effective in April of 1993. Plaintiff filed a complaint with the District of Columbia Department of Human Rights and Minority Development on September 23, 1992. The plaintiff's original complaint was filed in federal district court on November 25, 1992.

question, Howard's delay of Dr. Park's promotion, happened in 1986–87. Under Title VII, back-pay liability "shall not accrue from a date more than two years prior" to the filing of a complaint with the appropriate agency. Civil Rights Act of 1964, § 706(g), as amended, 42 U.S.C. § 2000e–5(g). Dr. Park filed her claim with the D.C. Department of Human Rights and Minority Development on September 23, 1992. Therefore, the earliest date for back-pay liability to be assessed to the defendant is September 23, 1990, a considerable time after the delay in promotion occurred. Consequently, the Court limits its award to $150,000 in compensatory damages for the discriminatory conduct stated in the Opinion of April 8, 1994.

### ORDER

Wherefore, upon the evidence adduced at trial, the proposed findings of fact and conclusions of law submitted by the parties' counsel, and the entire record herein, and for the reasons set forth in the accompanying Memorandum–Opinion of April 8, 1994, it is by the Court this 22nd day of September, 1994,

ORDERED that judgment be, and hereby is, entered for the plaintiff, Soon Y. Park; and it is further

ORDERED that the defendant, Howard University, tender to the plaintiff the sum of $150,000.00 in compensatory damages.