**Montreux Partners II, LP v Commissions Import-Exports S.A.**

2025 NY Slip Op 30951(U)

March 24, 2025

Supreme Court, New York County

Docket Number: Index No. 659610/2024

Judge: Margaret A. Chan

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

-------------------------------------------------------------------------X

MONTREUX PARTNERS II, LP

                           Plaintiff,

            - v -

COMMISSIONS IMPORT-EXPORT S.A.,

                        Defendant.

-------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 659610/2024 |
| **MOTION DATE** | 12/23/2024, 02/05/2025 |
| **MOTION SEQ. NO.** | 002 003 |

**DECISION + ORDER ON MOTION**

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 002) 19, 20, 21, 22, 23, 24, 25, 26, 50, 51, 52, 53, 54, 62
were read on this motion to/for         ORDER OF ATTACHMENT        .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 48, 49
were read on this motion to/for         EXTEND - TIME        .

      The above-captioned case is one of two cases[1] arising from defendant Commissions Import-Export SA (CMPX)'s attempts to fund litigation to enforce two international arbitration awards and the loans they took out to do so. In this action, plaintiff Montreux Partners II LP (Montreux) moves for preliminary injunction and attachment against both arbitration awards (MS 002). CMPX moves to accept their late-submitted opposition briefs to Montreux's motions (MS 003). For the reasons below and for the reasons discussed in the preliminary injunction and attachment decision in the companion case, the preliminary injunction and attachment motion is granted in part as modified herein and the motion to extend is granted.

## Background

      The court assumes familiarity with the facts, which have been recounted in detail in the court's decision on the motions for summary judgment in lieu of complaint.

---

[1] The companion case is *Missouri Partners Capital v Commissions Import-Export S.A. et al* (Index No. 659487/2024). Many of the facts in these cases are interrelated; CMPX is defendant in both cases; and plaintiffs in each case are represented by the same attorneys. As a result, the facts in the respective Decision and Order are largely identical. If the parties agree to consolidate, they may file a stipulation to that effect.

659610/2024   MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.         **Page 1 of 13**
Motion No.  002 003

As relevant here, defendant CMPX is the holder of two outstanding arbitral awards issued by the International Chamber of Commerce (ICC) against the Republic of Congo: Arbitral Award Number 9899, which was issued in 2000, has a face value of €290 million (Award 9899); and Arbitral Award Number 16257, which was issued in 2013, has a face value of "more than €1.5 billion" (Award 16257, and together with Award 9899, the Arbitral Awards or the Awards) (NYSCEF # 35, Hajaij SJILC Aff., ¶ 3).[2]

In order to finance the litigation costs of enforcing the awards against a sovereign nation, CMPX entered several agreements with Montreux in this case and with Missouri Partners Capital LLC (Missouri) in the companion case. On March 20, 2016, Montreux and CMPX entered a letter agreement by which CMPX agreed to purchase Montreux's interests in the Awards for $20 million (26 Letter Agreement or 2016 Agreement) (NYSCEF # 4, 2016 Agreement). Per the 2016 Agreement, Montreux's interests would be transferred immediately while the $20 million would be paid out of future recovery on the Awards (*see id.*). Specifically, Montreux would get priority interest in and 20% of the gross proceeds of future recovery under CMPX's claims against Congo (*id.* at 2). The maturity date was set for nine months later on December 31, 2016 (*id.*).

On January 14, 2021, Montreux and CMPX entered another letter agreement (2021 Letter Agreement) (NYSCEF # 5, 2021 Letter Agreement). The new agreement acknowledged CMPX's default, increased the outstanding debt by $2 million, but reduced Montreux's share of certain recovered funds (NYSCEF # 5 § 2). The new agreement also fully integrated the 2016 Letter Agreement, effectively making them one (*id.*). Montreux and CMPX went on to sign two tolling agreements acknowledging CMPX was still in default on the 2016 and 2021 Agreements (NYSCEF # 6, First Tolling Agreement, § 2; NYSCEF # 7, Second Tolling Agreement, § 3).

CMPX also entered into several agreements with Missouri between August 2022 and early 2024 (*see* NYSCEF # 38 - August 12, 2022 Missouri Note and Security Agreement; NYSCEF # 39 - June 2023 Missouri Note and Security Agreement; NYSCEF # 40 - January 2024 Missouri Promissory Note and Security Agreement at *40 [attaching as an exhibit an Aviation Financing Promissory Note dated October 2, 2023]; NYSCEF # 41 - March 2024 Agreement).

---

[2] For the purposes of preliminary injunction, CMPX "incorporates by reference the facts set forth in" the documents in support of its "Motion to Vacate or Modify the Temporary Restraining Order" in the *Missouri* companion action and the documents in its "Opposition to Montreux's Motion for Summary Judgment in Lieu of Complaint" (NYSCEF # 25, CMPX PI Opp, at 3). Similarly, Montreux's "Table of Abbreviations" indicates that it incorporates by reference its opposition brief to CMPX's motion to vacate TRO (*see* NYSCEF # 50, Montreux PI Opp, at Table of Abbreviations ["*Missouri* TRO Vacatur Opp"]). The court will consider those documents here.

**659610/2024   MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**          **Page 2 of 13**
**Motion No.   002 003**

[* 2]

The parties eventually agreed that CMPX would pledge Award 9899 as collateral to the various debts. In early September 2024, the parties consolidated Missouri's debts into a single promissory note (Note) and Pledge and Security Agreement (Security Agreement) (NYSCEF # 8 - Signed Consolidated Note; NYSCEF # 9 - Signed Security Agreement). The Note set a 25% default interest rate for Missouri's loans (NYSCEF # 8 § 11) while the Security Agreement extended this rate to Montreux's 2016 and 2021 Agreements (NYSCEF # 9 § 4.01). The Note also set the maturity date for September 30, 2024, with the option to extend to December 31, 2024, upon agreement of all parties (NYSCEF # 8 § 8). Most importantly, the Security Agreement pledged Award 9899 as collateral to both the Note and to Montreux's 2016 and 2021 Agreements (*see generally* NYSCEF # 9).

CMPX's principal, Mohsen Hajaij,[3] signed the Note and Security Agreement based on a promise from Montreux and Missouri's principal, non-party Michael Straus, that the maturity date would be extended to December 31, 2024 (NYSCEF # 35 ¶ 28). Straus did not keep this promise, and Montreux and Missouri refused to grant any extension. CMPX was unable to pay on September 30 (*id.* ¶ 29).

Hajaij, betrayed, spoke to Straus on December 5, 2024, to voice his feelings on the matter (*see* NYSCEF # 22 - Straus PI Aff ¶¶ 9-10). Straus avers that Hajaij went on a "rant" accusing Straus of "playing games," "chang[ing]" and breaching trust, and reiterating that CMPX could not pay until other events happened first (*id.* ¶ 9).[4] Straus further avers that Hajaij threatened to take several specific steps to frustrate Montreux's potential recovery by torpedoing the awards, including:

- Instructing CMPX's French counsel to stop prosecuting (1) "claims against Air France as a third-party garnishee of amounts owed by Air France to [Congo]," and (2) "claims against the major oil company Total under a guarantee issued by Total to CMPX, whereby Total had agreed to pay amounts otherwise payable to Congo to CMPX;"
- Instructing "Dassault Aviation" to stop repairing an aircraft seized from the Congo as part of the enforcement process;
- Settling the Arbitral Awards with Congo for $100 million instead of $2 billion—roughly "5¢ on the dollar."

(*id.* ¶ 10).

It is unclear whether Hajaij truly meant these threats or if he was simply frustrated. Regardless, Montreux and Missouri took him at his word and responded by both accelerating CMPX's debt (NYSCEF # 10, Notice of Acceleration 12/11/2024) and by filing this and the companion action. Missouri filed the companion action

---

[3] Sometimes written "Mohsin Hojeij."

[4] As explained in the decision on summary judgment in lieu of complaint, CMPX was attempting to sell an aircraft they had seized from Congo.

**659610/2024  MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**          **Page 3 of 13**
**Motion No.  002 003**

3 of 13

[* 3]

first on December 9, 2024 (*Missouri Partners Capital v Commissions Import-Export S.A. et al*, Index No. 659487/2024, Dkt. No. 1, Summons).[5] Montreux filed this action three days later on December 12, 2024 (NYSCEF # 1, Summons and SJILC).

Montreux also filed a motion for preliminary injunction and attachment (NYSCEF # 19). Missouri, in its action, made an almost identical motion but also requested a temporary restraining order (TRO) (*Missouri* Dkt. No. 10 - Proposed OSC). Montreux and Missouri, in their respective motions, sought attachment of *both* Arbitral Awards (not just Award 9899, the collateral) and enjoin defendants "and all persons and entities having actual notice" from, among other things, taking any steps to settle or enforce the Awards (NYSCEF # 19).

The TRO and attachment portions of Missouri's motion were initially granted in full at a hearing on December 11, 2024 (*see Missouri* Dkt. No. 19, OSC). However, following a hearing on February 20, 2025, the court modified the TRO and attachment order to allow CMPX to continue enforcing the Awards (*Missouri* Dkt. No. 102, Amended TRO). For the February hearing, CMPX also submitted a recent news article from an African news source claiming Straus was in talks with Congo to try to settle both Awards without CMPX (*Missouri* Dkt. No. 99, Africa Intelligence Article).

Montreux now moves for preliminary injunction and order of attachment on both Arbitral Awards to prevent CMPX from settling them (NYSCEF # 19). CMPX filed its opposition to Montreux's summary judgment in lieu of complaint and preliminary injunction/attachment motions only a few hours after the deadline due to technical difficulties, and therefore move for the court accept these barely-late filings (NYSCEF # 48, CMPX's Notice of Motion to Extend). Only the first motion is opposed.

### Discussion

### I.    Motion for Preliminary Injunction and Attachment (MS 002)

Montreux asks to attach both Arbitral Awards and for a preliminary injunction enjoining CMPX from taking any steps towards settling them. Montreux asks for *both* Awards rather than just Award 9899 (the collateral) because they claim the Awards are not actually worth their face value.

"Attachment is a harsh remedy and is construed narrowly in favor of the party against whom the remedy is invoked" (*VisionChina Media Inc. v S'holder Representative Servs., LLC*, 109 AD3d 49, 59 [1st Dept 2013] [internal citations omitted]). A plaintiff seeking an order of attachment "must show [1] the probability of its success on the merits of its cause of action, [2] that one or more grounds provided for in CPLR 6201 exist, and [3] that the amount demanded from the

---

[5] References to the *Missouri* docket will be denoted "*Missouri* Dkt. No. ___."

**659610/2024   MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**             **Page 4 of 13**
**Motion No.  002 003**

4 of 13

[* 4]

defendant exceeds all counterclaims known to the plaintiff" (*Reed Smith LLP v LEED HR, LLC*, 156 AD3d 420, 420 [1st Dept 2017]) and [4] demonstrate an "identifiable risk that the defendant will not be able to satisfy the judgment" (*VisionChina*, 109 AD3d at 60). Plaintiff must establish a ground for attachment as to each defendant (*Genger v Genger*, 152 AD3d 444, 445 [1st Dept 2017], citing *Ford Motor Credit Co. v Hickey Ford Sales*, 62 NY2d 291, 296 [1984]). Ultimately, "[w]hether to grant a motion for an order of attachment rests within the discretion of the court" (*VisionChina*, 109 AD3d at 59). Courts have further recognized that "[t]here is a great deal of overlap in the showing required for an order of attachment and a preliminary injunction" (*Goodstein v Enbar*, 2017 NY Slip Op 30496[U], at *5 [Sup Ct, NY County, Mar. 17, 2017]).

### 1. *Likelihood of Success*

In determining whether a party has established a likelihood of success, "the threshold inquiry is whether the proponent has tendered sufficient evidence demonstrating ultimate success in the underlying action" (*1234 Broadway LLC v West Side SRO Law Project, Goddard Riverside Community Ctr.*, 86 AD3d 18, 23 [1st Dept 2011]).

For the purpose of attachment and preliminary injunction only,[6] Montreux has shown a likelihood of success on the merits. Montreux has produced sufficient evidence establishing the existence of the 2016 and 2021 Agreements. Montreux has also submitted sufficient evidence to show that CMPX has yet to repay the loan. Therefore, Montreux has established a likelihood of success on the merits.[7]

### 2. *Grounds Under CPLR 6201*

Montreux easily satisfies the grounds under CPLR 6201. CMPX is a "foreign corporation not qualified to do business in the state" (CPLR 6201 [1]). This is sufficient, although it is important to note that "the mere fact that defendant is a non-domiciliary residing without the State of New York is not sufficient ground for granting an attachment" (*VisionChina*, 109 AD3d at 61-62). This issue is answered by the identifiable risk element.

### 3. *Identifiable Risk that CMPX Will Not Be Able to Satisfy Judgment*

"[T]the party seeking attachment must demonstrate an identifiable risk that the defendant will not be able to satisfy the judgment" (*id.* at 60 [internal citations omitted]). "The risk should be real, 'whether it is a defendant's financial position or

---

[6] As explained in the accompanying decision on Montreux's summary judgment in lieu of complaint, Montreux failed to establish that the 2016 and 2021 Agreements were the type of documents amenable to summary judgment in lieu of complaint.

[7] While CMPX has offered sufficient evidence to raise questions of fact that defeat summary judgment in lieu of complaint, questions of fact alone do not defeat attachment.

**659610/2024   MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**          **Page 5 of 13**
**Motion No.  002 003**

5 of 13

[* 5]

past and present conduct'" (*id.*, quoting *Ames v Clifford,* 863 F Supp 175, 177 [SD NY 1994]). "The court may consider the defendant's history of paying creditors or a defendant's stated or indicated intent to dispose of assets" (*id.*).

Montreux has adequately stated an identifiable risk: CMPX's principal Hajaij threatened to settle the awards for mere pennies on the dollar. CMPX does not deny that Hajaij made these statements, and instead tries to underplay the severity by describing him as a "very frustrated client" talking to his "former attorney" (NYSCEF # 25, Defs PI Opp, at 5). While it is possible Hajaij was in fact just venting, he nevertheless stated an "intent to dispose of assets" (*see VisionChina,* 109 AD3d at 60). The court takes these statements seriously. Combined with CMPX's history of nonpayment, Montreux has made out an identifiable risk that CMPX will not be able to pay a potential judgment. Montreux's motion for attachment will be granted in part, although as discussed below, the court in its discretion will narrow the scope.

### 4. *Amount Demanded Exceeds Counterclaims*

Montreux also meets the amount demanded element. "The requirement that the amount demanded by the plaintiff exceed all counterclaims known to the plaintiff applies only to those counterclaims 'the validity of which the plaintiff is willing to concede' " (*Genger v Genger,* 2014 NY Slip Op 30950[U], *5 [Sup Ct, NY County 2014], quoting Vincent C. Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C6212:2; and also citing *Freedman v Wilson Sec. Corp.,* 31 AD2d 627, 628 [1st Dept 1968]).

Here, Montreux does not accept as valid any of defendants' counterclaims sounding in fraud and misrepresentation among other allegations. These counterclaims does not affect the analysis. Hence, Montreux has established all elements for attachment, although, as discussed below, the scope of plaintiff's attachment request is narrowed.

As to plaintiff's request for a preliminary injunctive, because this relief is a "drastic remedy," it will not be granted unless plaintiff demonstrates demonstrates "a clear right" to such relief (*City of New York v 330 Continental LLC,* 60 AD3d 226, 234 [1st Dept 2009]). Entitlement to a preliminary injunction requires a showing of (1) the likelihood of success on the merits, (2) irreparable injury absent the granting of preliminary injunctive relief, and (3) a balancing of the equities in the movant's favor (CPLR 6301; *Nobu Next Door, LLC v Fine Arts Hous., Inc.,* 4 NY3d 839 [2005]). If one of the three requirements is not satisfied, the motion must be denied (*Faberge Intern., Inc. v Di Pin,* 109 AD2d 235 [1st Dept 1985]). "While the proponent of a preliminary injunction need not tender conclusive proof beyond any factual dispute establishing ultimate success in the underlying action...[a] party seeking the drastic relief of a preliminary injunction must nevertheless... establish a clear right to that relief under the law and the undisputed facts upon the moving

**659610/2024  MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**          **Page 6 of 13**
**Motion No.  002 003**

6 of 13

[* 6]

papers" (*1234 Broadway LLC v West Side SRO Law Project*, 86 AD3d 18, 23 [1st Dept 2011] [internal citations and quotations omitted]).

### 1. *Likelihood of Success*

"[T] he presentation by the defendant of evidence sufficient to raise an issue of fact as to any of such elements shall not in itself be grounds for denial of the motion" (CPLR 6312 [c]). As discussed above in relation to attachment, Montreux has established a likelihood of success on the merits.

### 2. *Irreparable Harm*

To establish irreparable harm, a party seeking a preliminary injunction must demonstrate that it cannot be compensated by money damages (*Credit Index, LLC v Risk Wise Int'l LLC*, 282 AD2d 246, 247 [1st Dept 2001]). If a claim is compensable by money damages, a preliminary injunction typically is not appropriate (*Credit Index v RiseWise Intl.*, 282 AD2d 246, 247 [1st Dept 2001]; *DiFabio v Omnipoint Communications, Inc.*, 66 AD3d 635, 636 [2d Dept 2009]).

Here, defendants' means of repaying on the Note is through the enforcement of their Arbitral Awards. Typically, a "general creditor has no legally recognized interest in or right to interfere with the use of the unencumbered property of a debtor prior to obtaining judgment" (*Credit Agricole Indosuez v Rossiyskiy Kredit Bank*, 94 NY2d 541, 544 [2000] [quoting CPLR 6301]). However, a secured creditor has a legally recognized interest in preventing dissipation of encumbered property prior to obtaining judgment (*see e.g. Winchester Glob. Tr. Co. v Donovan*, 58 AD3d 833, 834 [2d Dept 2009] [holding that injunctive relief was properly granted as the uncontrolled disposition of assets "would threaten to render ineffectual any judgment which the plaintiff might obtain" in an action by a secured party to set aside allegedly fraudulent conveyances made "in derogation of the plaintiffs perfected security interest"]; *Goldman Sachs Bank USA v Schreiber*, 2022 WL 60650 at *3 [Sup Ct, NY County 2022] [granting preliminary injunction enjoining the transfer of assets where plaintiff, a secured creditor, sought to prevent a dissipation of collateral, and the sale of such assets in direct contravention of agreements would cause irreparable harm by taking away the value of the collateral]).

Montreux has shown a risk of irreparable harm because Hajaij threatened to settle Award 9899—the collateral—for significantly less than its worth. Hajaij's stated intent was to prevent Montreux's recovery (NYSCEF #12 ¶ 10). Montreux has therefore shown a possibility of irreparable harm if CMPX is not enjoined from settling Award 9899.

The same cannot be said for Award 16257. Montreux has no right to that award as collateral or otherwise (*see Credit Agricole*, 94 NY2d at 544 ["general

**659610/2024 MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**      **Page 7 of 13**
**Motion No. 002 003**

7 of 13

creditor has no legally recognized interest in . . . use of the unencumbered property of a debtor"]). Moreover, as will be discussed below, Award 16257 is not necessary to fully compensate Montreux. Montreux has therefore shown irreparable harm only as to Award 9899, not Award 16257.

### 3. *Balance of Equities*

"To obtain an injunction, the plaintiff [must] show that the irreparable injury to be sustained is more burdensome to [such plaintiff] than the harm that would be caused to the defendant through the imposition of the injunction" (*Lombard v Station Square Inn Apartments Corp.*, 94 AD3d 717, 721-22 [2d Dept 2012]).

The balance of the equities favor granting an injunction. Montreux's irreparable injury—the settlement of the collateral Award 9899—risks leaving Montreux completely unpaid at the end of all this. CMPX has not provided strong evidence that enjoining them from settling the Award right now will injure them in any way. Therefore, preliminary injunction will be awarded. The scope of the attachment and injunction follows.

### 1. *Attachment Scope*

Montreux asks that the attachment cover both Award 9899, which serves as collateral to the Note per the Security Agreement, and Award 16257, which does not. Montreux also argues in opposition to CMPX's motion to vacate that attaching both Awards is necessary to cover the value of a potential judgment. Montreux claims that they are together owed over $40 million in principal and interest at a 25% annual rate, which means that within three years CMPX will owe as much as $80 million (*Missouri* Dkt. No. 47, Pltf's Vacate Opp, 9 n. 6).[8]

Montreux argues that despite the roughly $2 billion combined face value of the Arbitral Awards, they are in fact worth less than the debt. Citing to research from the World Bank, Montreux argues that "Highly Indebted Poor Countries" (HIPCs) like the Republic of Congo tend to pay back their defaulted debts at only 4.1% of the face value (*id.* at 7-8, citing World Bank, Debt Reduction Facility For IDA-Only Countries: Progress Update and Request for Extension 24, available at documents1.worldbank.org/curated/en/605491468154478265/pdf/676560BR0IDA0R0Official0Use0Only090.pdf [last visited by Montreux Jan. 30, 2025]). Montreux uses that statistic to calculate that the Arbitral Awards are only worth around $76 million (*id.*). At oral argument, Montreux asserted that CMPX did not offer any evidence to support a different valuation, and therefore that Montreux's calculations are essentially undisputed (NYSCEF # 62 - Hearing Tr at 15:8-11).

---

[8] Integrated by

**659610/2024  MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**
**Motion No.  002 003**

**Page 8 of 13**

8 of 13

[* 8]

Attachment will be granted against only Award 9899, not Award 16257. Montreux's arguments that the Awards are worth less than their face value are unsupported by the record. The World Bank's research is too general to make a statement about the claims here, whatever the merits of their research methods generally. Moreover, the research cited by Montreux appears to be from around 2012, making it almost 13 years out of date (*see* World Bank, Debt Reduction Facility For IDA-Only Countries: Progress Update and Request for Extension 24, available at documents1.worldbank.org/curated/en/605491468154478265/pdf/ 676560BR0IDA0R0Official0Use0Only090.pdf [last visited Feb. 26, 2025] ["Management recommends that the termination date of the (Debt Reduction Facility program) be *extended for an additional five years, from July 31, 2012 to July 31, 2017.*"][emphasis added]). Montreux's calculation based on these general, out-of-date statistics to assert that Award 9899 alone will not cover their claims is not credited here. More specific evidence that Award 9899 is worth less than face value is needed. The submitted evidence does not provide a reason to attach anything else.

Moreover, at oral argument, CMPX asserted that one or both Awards are guaranteed by a separate entity, strongly suggesting that the Awards are in fact worth their face amount (NYSCEF # 62 at 10:23 – 11:1). Straus referenced this guarantee in his affirmation in support of preliminary injunction, so Montreux cannot claim not to know about it (NYSCEF # 22 ¶ 10 [discussing guarantee by "the major oil company Total" to "pay amounts otherwise payable to Congo to CMPX"]).

Because there is no evidence to dispute the face value of the Awards, Award 9899—the collateral in the Security Agreement—will be the only award attached. Moreover, attachment will be prospective only and will not apply to any assets seized or acquired prior to December 10, 2024 (the date agreed to by the parties in the amended TRO, *see Missouri* Dkt. No. 102 at 2-3).

2. *Preliminary Injunction Scope*

For the same reasons, the preliminary injunction will only cover Award 9899, not Award 16257.

Additionally, the injunction will not cover "all persons and entities having actual notice" as requested. Montreux has used this language to serve notice on CMPX's litigation adversaries in other enforcement actions— non-parties outside of this court's jurisdiction.

The injunction also will not be limited to just the defendants, as defendants have raised concerns that Montreux, or at least Straus, may be preemptively taking steps to cheaply settle the Awards. True or not, the potential that Montreux or Straus may take such actions is too great a risk to ignore. These alleged actions may impact defendants' ongoing enforcement efforts by causing confusion or giving

659610/2024   MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.          Page 9 of 13
Motion No.  002 003

9 of 13

defendants' adversaries motivation to go directly to Montreux or Straus instead of defendants for any litigation. To balance these concerns, the injunction will be simultaneously limited and extended to all the parties to this and the companion action, their principals, directors, officers, agents, and anyone acting under the parties' orders, control, or authority. These terms will protect all parties' interests in Award 9899.

### 3. *Undertaking*

An undertaking is necessary and appropriate in this case but requires further briefing to determine the appropriate amount.

Both the preliminary injunction statute and the attachment statute allow for undertakings (*see* CPLR 6312[1]; CPLR 6212 [b]). The attachment statute, however, makes undertakings mandatory (*see* CPLR 6212 [b] ["On a motion for an order of attachment, the plaintiff shall give an undertaking, in a total amount fixed by the court, but not less than five hundred dollars"]).

Both the preliminary injunction statute and the attachment statute allow for undertakings (*see* CPLR 6312[1]; CPLR 6212 [b]). The attachment statute, however, makes undertakings mandatory (*see* CPLR 6212 [b] ["On a motion for an order of attachment, the plaintiff shall give an undertaking, in a total amount fixed by the court, but not less than five hundred dollars."]). The undertaking should be set at an amount "rationally related to the quantum of damages which [defendant] would sustain in the event that [plaintiff] is later determined not to have been entitled to the injunction" or attachment (*E. 54th Operating LLC v Brevard Owners, Inc.*, 223 AD3d 407, 408-409 [1st Dept 2024] [vacating $1.5 million undertaking that reflected defendant landlord's estimated remediation costs as the costs were "unrelated to the amount of damages that may flow from imposition of the *Yellowstone* injunction"]).

Additionally, the undertaking should not be based on speculation of possible damages (*see Visual Equities Inc. v Sotheby's, Inc.*, 199 AD2d 59, 59 [1st Dept 1993] [reducing undertaking where trial court's "consideration of possible damages . . . since no showing was made of any damages that may incur"]; *Republic of Lebanon v Sotheby's*, 167 AD2d 142, 145 [1st Dept 1990] [undertaking reduced from $14,000,000 to $1,000,000 because it was based "upon speculation without any appropriate support"] *see also Shu Yiu Louie v David & Chiu Place Rest., Inc.*, 261 AD2d 150, 152 [1st Dept 1999] [after vacating TRO, remanding for fact-finding hearing "to determine defendants' damages" from TRO]).).

Here, there is simply not enough evidence to determine defendants' potential damages from the attachment and injunction. The lack of evidence does not mean no potential damages exist. As defendants' French counsel affirms, there are ongoing enforcement actions in jurisdictions around the world (*Missouri* NYSCEF #

**659610/2024   MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**          **Page 10 of 13**
**Motion No.  002 003**

[* 10]                                            10 of 13

32, Schlesinger Vacate Aff I, ¶¶ 11-12). It is not clear if and how these other proceedings will be affected given that defendants are no longer enjoined from enforcement, but there is also no need to speculate. The parties are directed to submit further briefing on the issue of the undertaking.

Here, there is simply not enough evidence to determine CMPX's potential damages from the attachment and injunction. The lack of evidence does not mean no potential damages exist. As CMPX's French counsel affirms, there are ongoing enforcement actions in jurisdictions around the world (*Missouri* Dkt. No. 32, Schlesinger Vacate Aff I, ¶¶ 11-12). It is not clear if and how these other proceedings will be affected given that CMPX is no longer enjoined from enforcement, but there is also no need to speculate. The parties are directed to submit further briefing on the issue of the undertaking.

## II.    Motion to Extend Time (MS 003)

Finally, CMPX moves "pursuant to CPLR § 2004 for an order authorizing receipt of papers filed less than four hours after the filing deadline set forth in the Court's scheduling order" (NYSCEF # 49, Plochocki Aff ¶ 2). According to defense counsel, technical issues caused them to file their briefs in opposition to Montreux's (and Missouri's in the companion action) motions for preliminary injunction and attachment at 3:40 a.m. on February 1 rather than on January 31 (*id.* ¶ 3). CMPX reached out to Montreux to excuse the late filing, but Montreux's only response as of February 5 was " "We're evaluating our position on your untimely filings and will get back to you as soon as we're able" (*id.* ¶ 4). CMPX therefore filed this motion. Montreux does not oppose. The motion is granted with or without Montreux's opposition.

The parties are reminded that to act with professional courtesy. Unnecessary motions like this waste the court's time and resources and impact the credibility of *both* sides. Counsel should not need court intervention to agree to something as banal as a four-hour extension to a filing deadline. Similar[9] tit-for-tat and/or obstructionist behavior will not be tolerated.

## CONCLUSION

For the reasons above, it is hereby

ORDERED plaintiff Montreux Partners II LPs' motions for preliminary injunction and attachment (MS 002) is granted as modified below; and it is further

---

[9] For example, there is no need to double-file identical letters on the same docket to respond to the other side's identical letters double-filed on the same docket (*see Missouri* Dkt. Nos. 105 – 110; *see also Missouri* Dkt. Nos. 109 & 110, Pltf's Letters, at 1 [referencing CMPX's "duplicate letters" as reason for plaintiffs' duplicate letters]).

659610/2024   MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.                Page 11 of 13
Motion No.  002 003

11 of 13

ORDERED that the sheriff of the City of New York or of any county in the State of New York, attach property of the Defendant, Commissions Import-Export S.A., within his or her jurisdiction, at any time before final judgment, by levy upon the interest of the Defendant in the following:

- The Defendant's rights, title and interest in and to, or the value of, that certain arbitral award in Case No. 9899 issued by the International Chamber of Commerce (ICC) to Commissions Import-Export S.A. against the Republic of the Congo ("Arbitral Award No. 9899");
- The Defendant's rights, title and interest in and to, or the value of, any judgment of any court enforcing or recognizing Arbitral Award No. 9899, including without limitation that certain judgment in *Commissions Import Export, S.A. v. The Republic of Congo et al.*, 17-mc-00175 (S.D.N.Y.), entered May 26, 2017, registering judgment granted in No. 12-cv-743 (D.D.C.);
- The Defendant's rights, title and interest in and to, or the value of, any claims or other proceedings pending in any jurisdiction, whether reduced to judgment yet or not, arising out of or relating to any form of enforcement of any of the foregoing; and
- Any future proceeds of the foregoing; and it is further

ORDERED that the parties to this action and the companion action *Missouri Partners Capital v Commissions Import-Export S.A. et al* (Index No. 659487/2024), their principals, directors, officers, agents, and anyone acting under the parties' orders, control, or authority, are enjoined from taking any step toward, participating in, assisting, or effectuating the disposition, sale, transfer, encumbrance, removal, payment over, settlement, resolution, hindrance, impairment, compromise, or conveyance, in whole or in part, of any of the following or any form of interest therein:

- Any rights, title and interest in and to, or the value of, that certain arbitral award in Case No. 9899 issued by the International Chamber of Commerce (ICC) to CMPX against the Republic of the Congo;
- Any rights, title and interest in and to, or the value of, any judgment of any court enforcing or recognizing Arbitral Award No. 9899, including without limitation that certain judgment in *Commissions, Import Export, S.A. v. The. Republic of Congo et al*, 17-mc-00175 (S.D.N.Y.), entered May 26, 2017, registering judgment granted in No. 12-cv-743 (D.D.C.);
- Any rights, title and interest in and to, or the value of, any claims or other proceedings pending in any jurisdiction, whether reduced to judgment yet or not, arising out of or relating to any form of enforcement of any of the foregoing; and
- Any future proceeds of the foregoing; and it is further

**659610/2024 MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.**  **Page 12 of 13**
**Motion No. 002 003**

ORDERED, for the avoidance of doubt, that the foregoing attachments and restraints shall not apply to that certain Dassault Falcon 7X(L3) aircraft bearing manufacturer serial number 232 or any other asset seized or acquired before December 10, 2024 in connection with enforcement activities based upon the Awards; and it is further

ORDERED that defendant's motion to extend time (MS 003) is granted; and it is further

ORDERED that the defendant shall serve a copy of this Decision and Order with notice of entry on all parties and the Clerk of the Court in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "E-Filing" page and on the court's website).

|  |  |
|---|---|
| **3/24/2025** | |
| **DATE** | **MARGARET A. CHAN, J.S.C.** |

| CHECK ONE: | ☐ CASE DISPOSED | ☒ NON-FINAL DISPOSITION | |
|---|---|---|---|
| | ☐ GRANTED ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

659610/2024   MONTREUX PARTNERS II, LP vs. COMMISSIONS IMPORT-EXPORT S.A.   Page 13 of 13
Motion No.  002 003

13 of 13